MARGARET ECLIFF, ADMINISTRATRIX, v. THE WABASH, ST. LOUIS & PACIFIC RAILWAY COMPANY.

*Negligence—Trespasser—Injury to infant—Directing verdict.*

1. Where a boy twelve years of age was allowed to ride in an exposed and dangerous position on a railroad train, with the knowledge and by the implied permission of those in charge,—

   *Held*, that he could not be treated as a trespasser.

2. A boy twelve years old, of ordinary intelligence, was killed while riding on a freight train in front of the engine, which was pulling the train, tender foremost, by a collision with another engine. On the trial of a suit against the railroad company for damages, these facts appeared, there being no conflict in the testimony.

   *Held*, that the fact that a boy of that age is more reckless and not as cautious as a man, in the face of such danger, is not of itself enough to excuse him from his contributory negligence in riding as he did, and no fault of the company or its employés, short of *gross* or *wanton* carelessness, can excuse him from the results of such negligence.

   *Held*, further, that the caution required is according to the *maturity* and *capacity* of the child, to be determined in each case by the facts in such case, and the degree of discretion in avoiding danger depends upon the *age* and *knowledge* of the child; and when there is conflicting evidence as to the danger likely to be incurred, or as to the act or acts in getting in the way of such danger, or as to the age or capability of the child, or if all the circumstances of the case, when the facts are undisputed, are such that ordinarily prudent men would be liable to differ in

their views as to the negligence imputed, the question of contributory negligence should be submitted to the jury.

*Held*, further, that in this case, there being no conflict of evidence in determining whether or not the boy was negligent, the case was properly taken from the jury.

Error to Wayne. (Chambers, J.)   Argued November 11, 1886.   Decided January 13, 1887.

Case.   Plaintiff brings error.   Affirmed.   The facts are stated in the opinion.

*E. H. Sellers* (*W. L. Carpenter*, of counsel), for appellant.

*Alfred Russell*, for defendant.

MORSE, J.   The plaintiff brought suit for damages for the negligent killing of her son, a boy 12 years of age.   The jury were directed by the court below to find a verdict for the defendant.

The plaintiff's intestate, and another boy, Edward Deidrich, rode on a freight train of defendant to Delray, waited around there until the train was ready to return to Detroit, and then they climbed upon the freight car next to the engine, with the intention of riding back to the city.   They remained on the top of this car some time; but, on account of the sparks flying back upon them from the smoke-stack of the engine, they left the car, and got upon the front of the engine, which was pulling the train, tender foremost.

They were riding on the front part of the engine when it collided, at the foot of Twenty-first street, in the city of Detroit, with another of defendant's engines, by which collision the plaintiff's intestate was killed, and Deidrich lost a leg. The boys rode out to Delray in the afternoon, and started on their ride back about 6 P. M.   Delray is about three miles outside of the city limits.

The collision occurred October 15, 1883.

It was shown upon the trial that plaintiff's intestate, and

other boys of like age, and older, frequently rode on these trains to Delray, and back again to the city, and that at least one conductor allowed them to do so.

Deidrich was a witness, and testified that Bailey, the one that had permitted the boys to ride on the train, was the conductor, but thinks the brakeman on the last car had charge of the train coming into Detroit that night.

"The brakeman who brought the train in that night saw me on the train. He was nearly on the last car. He saw me get on, I know, because he was looking right at us. I did not see any other brakeman there. * * * I saw the engineer. Well, he was looking. I don't know if he was looking at us. We were on the first car next to the engine. I was on top of the car, and Ecliff was with me. The engine was right in front of it. * * I think the smoke-stack would have been in the way to prevent the engineer from seeing us on this car. There was a window that they looked out of in front. There was nothing to prevent his looking out of that window, and seeing us on the car. If he had looked back he would have seen us. From where he stood to about where we sat was about fifteen feet. I saw the fireman."

At the time of the collision the boys were sitting right in front of the boiler on the engine. From there they could not see the engineer, or he them. When the boys rode out to Delray, the train was in charge of Bailey. They rode on top of a car, some half dozen or more cars from the engine. Deidrich swears Bailey saw them at this time, and that he was also on top of the cars, between the boys and the engine, and standing up.

"We had ridden on the train before this time often. I could not tell you how many times. We usually rode on top of the freight cars, and sometimes got on the front part of the engine. * * * When we got on the cars from time to time, we were where the conductor could see us getting on. When we got on the cars, he would be on top of the train. He could see us get on the cars. * * * Generally there would be a brakeman and one conductor,—a brakeman on the back end."

The same conductor and train hands who ran the freight

train out to Delray in the afternoon ran the 6 o'clock P. M. train into the city.

The rules of the defendant company forbid conductors, brakemen, engineers, and all others connected with the running of trains, to permit or allow any person or persons to ride upon the engine or tender, except certain officers and employés of the road, without permission from the general or division superintendent, or in case of storms or accident. Freight trains were only allowed to carry passengers when specified in the time-tables. This train was not so specified. These boys were not passengers in the strict sense, however, as they paid no fare, and, if not stealing rides, were taking free passage for their own sport, under license from the conductor or other train hands.

Mr. Dewey, who at the time was night yard-master, testifies that he acted as conductor from Delray into Detroit, the night of the accident, of this train upon which plaintiff's intestate was riding. He swears that there were 15 cars in the train. The switch-engine was pulling the cars down, moving backwards, tender foremost. A part of the cowcatcher was taken off, and a step put on for the accommodation of the switchman. A boy or man could sit there. Dewey says he was on top of the cars, about the middle of the train, coming into the city. He claims he did not see the boys until after the accident, and that it was dark when the train left Delray. "We lit the head-light." Thinks "it was sufficiently dark to interfere with seeing persons the length of seven cars with distinctness." During the trip Dewey remained on top of the cars. He moved both ways on the cars, probably three or four car-lengths, and up to the third car of the engine. "I might have been on the first car during the trip. Would not say positively."

The conductor Bailey was not sworn, but there was evidence tending to show that he and his brakemen were cog-

nizant of boys frequently riding on the trains, and permitted them to do so.

Deidrich was recalled after the testimony of Dewey, and recognized him as the man he saw on the top of the train, whom he thought was a brakeman in charge of it.

H. H. Jeanette, the engineer on the train, testified that he did not see either of the boys upon the train until after the collision. He then saw Deidrich getting off. He had a copy of the rules, and never knowingly permitted any boys to ride upon the train. He admitted that he had seen boys riding upon the top of the cars, and in such cases he did not stop unless he received a signal from the conductor.

"I saw two boys at Delray when we arrived there. Part of the time they were on top of the cars, part of the time on the ground. * * * I supposed afterwards these boys hurt and killed were the two boys; I don't know that they were."

He further testified that he had seen boys riding on top of the cars both ways, and he did not stop to put them off. He never stopped to remove boys between Detroit and Delray, or coming back into the city, until he got into the yard.

Frank Weissel, the brakeman, testifies that he knew the two boys, and saw them playing that evening at Delray just before the train started. "I told them if I seen them on the train I should either put them off or kick them off." Did not see them upon the train until after the collision. He did not pass up and down, but was stationed upon the rear end of the train. He did not know that the boys came out with their train, but knew they got out there some way, and felt satisfied that they were waiting to ride back into the city on the train.

"I made no effort to see whether they attempted to get on board of our train. I had no time. They were not the first boys I had ever told to keep off the trains. * * * I saw them waiting for the train to start to the city after I had told them not to get on the train, and I said nothing to them."

He is not certain, on cross-examination, whether he told both of the boys not to get on the train, but is positive that he told one of them so.    On being asked if, as a matter of fact, he did not know these boys were on the train, he said:

"Morally, I knew that they were there, but I did not see them there."

The circuit judge thought that the plaintiff's intestate was a trespasser, and that the defendant did not know he was on the train, and ruled that, under the pleadings and the evidence, the plaintiff could not recover.   He also intimated that, if the brakeman and engineer knew he was there, it would make no difference.

There is no doubt but the collision was the proximate cause of the death of the boy, and that such collision was caused by the negligence of the employés of the company. The counsel for defendant claims that the boy was a trespasser, and the defendant owed him no duty except not to wantonly injure him, and that a boy of 12 knows as well as an adult that the position occupied by decedent upon the train that night was a dangerous one, and he was therefore guilty of contributory negligence.

There was evidence, as before shown, to the effect that this boy and others had been permitted to ride upon this train before, and were in the habit of so doing frequently.   They rode out to Delray upon this train in the afternoon, and were seen, and known to be waiting to ride back to Detroit upon it.   Deidrich testified that he was not forbidden to get on the cars that night.   I think there was evidence tending to show that these boys were riding by implied permission of the parties in charge of the train, and the brakeman admits that "morally" he knew the boys were there, but claims he did not see them.   If permission was granted or implied by the action of the defendant's employés, the boy could not, in my opinion, be a trespasser.

But, in the view I take of another branch of the case, it is

not necessary to discuss this question further. If the plaintiff's intestate was guilty of contributory negligence, there can be no recovery. He was riding in an extremely unsafe and dangerous place in the first instance; and, when he changed his position to the front of the engine, he occupied a still more dangerous seat. An adult person could not recover, under such circumstances, for the negligence of the defendant and its employés, unless such negligence was gross or wanton. There can be no claim of such negligence in this case.

But it is claimed by plaintiff's counsel that a child of 12 years cannot be charged with the same discretion and judgment as an adult, and that it is sufficient if the boy in this case exercised reasonable care according to his age and capacity. And it is further contended that this reasonable care, to be so exercised, is a question in all cases to be determined by a jury under the particular circumstances in each case.

It is true that the caution required is according to the maturity and capacity of the child, to be determined in each case by the facts in such case; and the degree of discretion in avoiding danger depends upon the age and knowledge of the child. And when there is any conflicting evidence as to the danger likely to be incurred, or as to the act or acts in getting in the way or reach of such danger, or as to the age or capability of the child, the question of the contributory negligence of the person injured or killed should be submitted to the jury; or if all the circumstances of the case, when the facts are undisputed, are such that ordinarily prudent men would be liable to differ in their views as to the negligence imputed, then such negligence should not be determined by the court, but the question left to the jury under proper instructions.

In this case there is no conflict of evidence upon these points to be considered in determining whether or not the boy was negligent.

The plaintiff's intestate was of ordinary intelligence, and

usually bright for his age, as his mother testifies. Although delicate in health, he was "full of animal spirits," and out of doors a great deal. He was, of course, more heedless and thoughtless of danger than a man; but he was living in the immediate vicinity of railroad trains, and accustomed to them. He must be presumed to have known of the great peril and danger of riding where he did. The fact that it was a place of great danger is a matter of common knowledge, and is intensified by the fact that no one upon this train was injured but these two boys, who, in the position they were, could not well escape hurt by such an accident.

A boy of 12 years knows as well as an adult that upon the top of freight cars, or in front of the engine, when reversed, between that and the cars, is not a safe place when the train is moving. The fact that a boy of that age is more reckless and not as cautious as a man, in the face of such danger, is not of itself enough to excuse him. I can see no reason for submitting a question as plain and clear as this one to a jury. There could be but one result if the judgment and oaths of the jurors were not warped and disregarded because of the natural sympathy that goes out instinctively towards the sufferer in such a case as this.

The plaintiff's intestate was guilty of contributory negligence in riding as he did upon the train, and no fault of the company or its employés, short of gross or wanton carelessness, can excuse him from the results of such negligence. *Messenger v. Dennie,* 137 Mass. 197; *Masser v. Chicago, R. I. & P. Ry. Co.,* 68 Iowa, 602 (S. C. 27 N. W. Rep. 778); *Chicago & N. W. Ry. Co. v. Smith,* 46 Mich. 504.

The circuit judge was therefore correct in directing a verdict for the defendant, because the negligence of plaintiff's intestate must be considered as contributing to his death.

The judgment is affirmed, with costs.

The other Justices concurred.