Smyseb, J.
The Cleveland, Terminal & Valley Railroad Company files a petition in error in this court to reverse a judgment recovered in the court of common pleas against it, in favor of Frederick Heiman, the administrator., of . the estate of Walter Heiman, deceased.
The petition is quite lengthy, unnecessarily so, and I shall not attempt to read it. It avers the death of the decedent on the 15th day of October, 1896; the appointment qf the administrator, and sets out the next of kin; also that the defendant, the Railway Company, is an Ohio corporation passing through Stark and other counties; that Pátterson street is one of the streets in the city of Canton; that this railroad in question crosses Patterson street, and, in short, that at the particular point where the killing occurred there are no fences, no enclosures of any sort, and by long use the pedestrians in that part of town have gone over, rather indiscriminately, across the railroad tracks, instead of going across the track where there seems to be a walk to go across towards Wade street,and come from Wade street past the Malaley house to town, or from town. Alleges the user, and license by the railroad company to this use of its track for men, women and children; that on the day in Question, the 15th day of October, 1896, the decedent, Walter Heiman, a boy of twelve years of age, was on the track attempting to cross; the crossing was obstructed by reason of a freight train standing on the east track, there being three tracks there; that he was without fault; various acts of negligence are recited, that it is a very populous *489 pait of the city, where many people pass and re-pass; it is dangerous, it-is at grade; no gates, no flagman; that the engine that killed Walter, was not flagged; no bell rung; no whistle blew; no look-out on the engine, or anything of that kind, and various acts of negligence by which he was killed; it denies that he was guilty of contributory negligence, and makes the further averment that he was a boy of immature years, inexperienced in judgment and knowledge of the dangers incident to the situation described; that he was unable to comprehend the dangers produced by the negligent acts of the company; that said Walter stood on the west track about eight feet north of the crossing proper awaiting the passage of a freight train on the east track, and that he stood at the point where people were accustomed to stand awaiting the clearing of the track, and while so standing, he was struck and killed.
To that an answer was filed, which is, in substance, a general denial, and an averment that Walter Heiman was guilty of contributory negligence.
A reply is filed to that denying contributory negligence.
On this issue the case was tried to a jury, which resulted in a verdict for the plaintiff below in the sum of $4,200.00. The court, on motion, remitted seventeen hundred dollars, reducing the verdict to $2,500.00. Motion for new trial was interposed and overruled, and the court entered judgment for $2,500.00.
The record is very voluminous, and we are not going to mislead counsel by saying that we have examined this entire record; and counsel can readily understand that it would be wholly unnecessary to do so; that in the trial of a case of this character, many witnesses will be called to a single point in controversy, and that necessarily much evidence becomes merely cumulative.
The plaintiff below called a great many witnesses to show the situation of the street, the railroad crossing, the use of *490 the track by the public, the management of trains, and ob-struction of the street by the company, and the various acts ■ of negligence alleged in the petition.
On the other hand, the company called in its behalf, the ¡men in charge of the engine and about the track on the day in question to show how it managed its trains, and that the men in charge of the engine had no knowledge of the decedent being on the track when struck and killed.
We have carefully examined the record, so as to enable ■us to say we have no hesitancy in finding that the plaintiff •below has sustained the chief allegations of his petition' by ¡abundant evidence..
But the real contention is, that the plaintiff is not entitled ?to a recovery, and that this judgment ought not to stand because of the claimed negligence on the part of the decedent, as shown by the record, which contributed to his -death, and because of alleged errors in the charge of the •court and the refusal to charge as requested by the com,pany.
On the day in question this boy was at sehool; he comes •from school about four o’clock in company with Phillip Mallaley; he lived and had lived for years in close proximity to this railroad; he was past twelve years of age, and' I will say right now that I may not recur to it again, he was an exceptionally bright boy, as appears from the testimony of his school teacher; she says, that he was an exceptionally bright boy, being only twelve years of age he ranked in school along with boys of fitfeen or sixteen in Intelligence.
Now, he comes from school on the afternoon in question ■in company with Phillip Mallaley, who was a boy seven years old, or possibly eight at the time of this trial, and these boys were engaged in twirling sticks, and, as described by all the witnesses, they were playing dram major. They had come from Heiman’s home on Wade street, *491 ■ or over in that section — 'had come by the Mallaley home, Heiman having a stick, and Phillip going into -his own house to get a stick, and together they go toward the railroad, as they are playing along the edge of the track. They are observed by people; Annie Mallaley sees them down there; the mother, Harriett Mallaley; William .Mallaley. was on the porch, but he says that he did not observe them; but, there are three witnesses who saw the situation, who saw the boys down there, and they are Annie Mallaley, Harriett]Mallaley, the mother,- and Phillip.
Now, without going into the details of what this railroad ■company was doing and how it was doing it that afternoon, except to state that the men operating the engine had no knowledge that the boy was on the track, I come right to the vital question in the case — us to what occurred at or ■ about the time of the killing. Mrs. Mallaley sees the boys • down there; it is broad day light; she calls to them to watch ■ out, not get on the track. The record does not disclose that the decedent heard that admonition. Phillip called to Walter just before he was struck, admonishing turn of the -approaching engine; some man down below, whose name I have now forgotten, called to him, Mrs. Mallaley says that the boys were playing, that she saw them on the track, and : so does Annie.
It was a theory of the plaintiff’s case that this crossing being used in the manner that I have indicated,"that the boys had a right to cross there, and that the®, decedent was ■using the crossing for the purpose of crossing the street. There is not a word of testimony that justifies™the conclu,-sion that the boys, and, especially this boy, ijwas there at that time for the purpose of crossing the railroad ®track on any business, whatever. And not only is there] an absence -of all testimony upon that subject, but the affirmative testimony, if it is to be of any value at all — the testimony of "the mother, and the sister, and Phillip Mallaley^is^that the íboys were playing there.
*492 While they are so engaged, an engine, with the tender to the south, is standing north of them. It comes back,, the boy is struck and killed, under the circumstances as I have already indicated. The company contends that this engine was visible; that there was no reason why this boy should not have seen it, that he was of an age, and that he-had capacity and intelligence enough to know that an engine was dangerous; that the place where he was playing was a dangerous place; and, that, in addition to that, he was familiar with the use of the tracks and grounds by the-railroad company; that, being of that age, in possession of his faculties, as I have stated, he took no precaution, he-exercised no care, and that this injury was due wholly to his own want of care.
This engine, as appears from this testimony, was only a. few feet from this-boy when standing still. The witnesses, Mrs. Mallaley and Miss Mallaley, differ somewhat, and I don’t know but what Mallaley speaks on the subject. The girl says probably ten feet, and I think the mother says twenty feet, but at- any rate, all the testimony is that the-engine stood but a few feet away. Now, without warning, ringing of the bell, blowing of the whistle, or any admonition on the part of those in charge of that engine, it started south, and run over the boy.
Now, that brings us to the question as to what is the-rule in Ohio where negligence or contributory negligence' is charged as against an infant. We have no hesitancy in finding from this record that by the exercise of ordinary care, ordinary precaution on the part of the decedent, this-accident might have been avoided. The question then is, is the decedent excused from the exercise of that ordinary care, that even boys of his age, intelligence and experience-would be expected to exercise under like circumstances?
I might as well, in passing, say something about some of these requests in view of the facts, and I can dispose ofi them as I go along.
*493 The court charged, and we think correctly, the rule laid ■down in the 45th Ohio St., page 678, as to a railroad crossing in a town where there are people, etc. We think that that was the duty of this company in this particular instance. The proof clearly shows that for years the railroad down there, the crossing, had been used in the manner ■claimed here, and by many people.
Now, we come to the care of children, and I call attention to the 46th Ohio St., page 283; that is the Rolling Mill case.
“In the application of the doctrine of contributory negligence to children, in actions by them, or in their behalf, for injuries occasioned by the negligence of others, their conduct should not be judged by the same rule which governs that-of adults; and while it is their duty to exercise •ordinary care to avoid the injury of which they complain, ordinary care for them is that degree of care which children of the same age, of ordinary care and prudence, are accustomed to exercise under similar circumstances.”
The effect of this case from what Judge Williams says is, Ohio has taken a middle ground on the subject of the care that minors should exercise. He says:
“One rule requires of children the same standard of •care, judgment and discretion, in anticipating and in avoiding injury, as adults are bound to exercise. Another wholly exempts small children from the doctrine of contributory negligence. Between these, a third and more reasonable rule has grown into favor, and is now supported by the great weight of authority, which is, that a child is held to no greater care than is usually possessed by children of the same age.” * * * “To constitute contributory negligence in any case, there must be a want of ordinary care, and a proximate connection between ■such want of care and the injury complained' of, and, ■ordinary care is that degree of care which persons of ■ordinary care and prudence are accustomed to exercise ■under similar circumstances. Children constitute a class *494 of persons of less discretion and judgment than adults, of which all reasonably informed men are aware. Hence, ordinarily prudent men reasonably expect that children will exercise only the care and prudence of children, and no greater degree of care should be required of them than is usual, under the circumstances, among careful and prudent persons of the class to which they belong. We think it is a sound rule, therefore, that in the application of the doctrine of contributory negligence to children, in actions by them or in their behalf for injuries occasioned by the neg, ligence of others, their conduct should not be judged by the same rule which governs that of adults, and, while it is their duty to exercise ordinary care to avoid the injuries of which they complain, ordinary care for them is that degree of care which children of the same age, of ordinary care and prudence, are accustomed to exercise, under similar circumstances. ”
To the same effect is the case in 54 Ohio St,, page 181, and in commenting upon the rule laid down by the trial court in that case, Judge Bradbury says that the degree of responsibility imposed by the proposition charged upon the intestate was too high. “We know of no rule of Jaw that imposes upon a boy of fourteen years, who may go out to work and earn wages, and go about the streets of a city unattended, a higher degree of care concerning his safety, than on a boy of the same age and equal intelligence who, unattended, may go to and from school, or roam about the streets unemployed.” I call special attention to what follows on the same page in view of the conclusions we arrive at as will appear further along. He says the record does not show any attempt to prove that the intestate was unusually bright and intelligent.
Now in the 53rd Ohio St. — and I call attention to this for another reason — in the 53rd Ohio St,, they aver in the petition that the child killed or injured was of immature years, and that was one of the questions before the court as to whether the petition was sufficient; whether or not, upon *495 the face of the petition there was not such contributory negligence shown as would defeat a right of recovery, and the court said that that allegation that the child is of immature years, etc., saves the petition and makes it good.
“Where a petition in an action against a railroad company for personal injuries charges that defendant negligently and unlawfully stopped a freight train across a public highway for a period of more than five minutes, and that while plaintiff, after the expiration of that period,was attempting to cross the street between the cars, defendant, without warning, wrongfully and negligently backed the train, causing plaintiff’s injuries, such two charges of negligence are not separable in the sense that one only would be the proximate cause of the injury; taken together they constitute a sufficient allegation of negligence as agianst a general demurrer.
‘ ‘ A child of nine years of age is not guilty of negligence if he exercises that degree of care which under like circumstances would reasonably be expected from one of his years and intelligence. Whether he used such care in a particular case is a question for the jury. And even though the petition might, if the plaintiff were an adult, be construed as disclosing contributory negligence, an averment that the plaintiff was at the time a child of nine years, and of immature experience and judgment, is sufficient to rebut the pre, sumption of contributory negligence.’’
I quote Judge Spear in this connection:
“But an imperfect rule is practically better than none. Therefore, at the common law, a child under seven years is conclusively presumed incapable of crime. Between seven and fourteen the law also deems the child incapable, but only prima facie so, and evidence may be received to show criminal capacity. The rule is sustained by many authorities, and may be regarded as an accepted rule of criminal law; and it would seem that the principle should have application to a case of negligence. Prof. Thompson in his work on Negligence, at page 1181 comments as follows: ‘Two .questions arise: 1. At what age or period of a child’s development shall it be held to be sui juris for the purpose of cases of this kind; 2. Whether this is a *496 question of law or a question of fact. When the age of the child admits of no doubt as to its capacity to avoid danger, the court will decide this question as a matter of law. If there is any doubt of the child being of the age and capacity that in law constitutes one sui juris, it should be submitted to a jury to say by their verdict whether he is so or not. Unless, therefore, it can be held that the injured person had the capacity to foresee and avoid danger, negligence will not be imputed to him. And, inasmuch as this presumption will not be visited upon children under the age of fourteen, it follows that the averment that the plaintiff was a boy of nine years of age, and that he was of immature experience and judgment, is sufficient to rebut any legal presumption of contributory negligence •from other facts appearing in the petition. ’ ’ ’
It is quite apparent from these authorities that there are two principles deducible. First, the rule by which the conduct of children of a given age (under fourteen ) is to be judged. Second, that when such age affirmatively appears in the petition for the purpose of asserting a cause of action, 'the cause shall not be defeated because of the apparent contributory negligence. The allegation of age (being under fourteen or of any given age under that, or of immature years) has the effect usually of removing the imputation of neglect; or in other words, the effect of the presumption, which would otherwise arise, is avoided. But, it must be equally apparent that the removal of this presumption by allegation of age is limited to pleading only, and can not be held to supply proof so far as a recovery is concerned. If this'is not true, we might readily conceive of a situation like this: two boys, one fourteen years of age, the other thirteen years, eleven months, and twenty-nine days of age, injured under exactly similar circumstnces, and we will say 'further at the same time. The boy fourteen years or over can not recover, whilst the other would be entitled to a recovery because of the presumption, which arises in his favor ’by reason of non-age. So that the rule in Ohio clearly is, *497 that any person under the age of fourteen, because that seems to be the age required by the supreme court, is held to that degree of care to relieve them of contributory negligence that would be attributed to persons of his age and experience. We have been cited to no decision in Ohio that decides the question as matter of law, that upen a given state of facts, a child, under fourteen, is held guilty of such contributory negligence as will defeat a recovery.
In determining the question before us, we assume the negligence of the company established, and the material inquiry relates to the conduct of the decedent. The company’s negligence can not be material if the decedent by reason of his age is not excused from the exercise of due care, and if by the exercise of such care, the accident could have been avoided.
In support of our conclusions, we feel justified in citing adjudicated cases from other states. In Messenger v. Denny, 137 Mass., page 197; the injured person was a boy about nine years old, and while engaged in riding upon the runners of sleighs upon the public streets, suddenly left the sleigh on which he was riding while it was yet in motion in a frequented thoroughfare without looking behind him,- and within thirty feet of a horse and sleigh which was following him, by which he was struck and, injured. The court held that'“His injury was a natural consequence of his careless act.” And held ‘‘That without considering whether there was any evidence of negligence on the part of the defendant the court should have ruled the paintiff could not recover, ”
In the case of Masser v. C. R. & P. Ry. Co., 68 Iowa, page 602, the decedent, a boy of eleven years of age, was killed while playing upon the railway track of the defendant.
On page 605 the court says:
“A boy of eleven years of age knows, as well as aq *498 adult does, what a railroad is, and the use to which it is put, and the consequences to a person, who should be struck by a passing train, and knows that he should not stop to play or lounge amid a net work of tracks. It is true that a boy of that age cannot be presumed to have the judgment of an adult, but it does not require much judgment to keep from walking in a dangerous place, the dangers of which are fully understood.
“We certainly cannot hold that a boy eleven years old is exercising reasonable prudence in making such a place as that to which the deceased and his companion went, a play ground or lounging place, or that a jury would be justified in so finding.”
In the case of Ecliff v. The W. S. T. L. & P. Ry. Co., 64 Mich., page 196, the deceased was a boy twelve years of age, who was killed while riding upon a train of the defendant company, in a position in which he was exposed to danger. On page 203 the court says:
“A boy of twelve years knows as well as an adult that upon the top of freight cars or in front of the engine when reversed, and between that and the cars, is not a safe place when the train is moving. The fact that a boy of that age is more reckless and not as cautious as a man in the face of such danger, is not of itself enough to excuse him.”
In Moore v. Ry. Co., 99 Pa. St., 301, the deceased was a boy ten years old, bright and intelligent, and had been sent on an errand; at the time of the accident he was walking on the outer ends of the railway ties, at a point where the railway track ran along the street in a populous city. He was struck by a rapidly moving express train, which gave no,signal of its approach. A non-suit was awarded on the ground that the boy was guilty of contributory negligence, and the supreme court held that this was not error.
There are two New York cases to which we call especial attention: 58 N. Y., 248, and 124 N. Y., 308. In the first case the evidence showed that the boy was an intelligent lad *499 thirteen years of age, who lived near defendant’s road, which he crossed daily in going to and returning from school. He was conversant with the road and the manner of running <the trains. Upon the day of his death the boy was last seen going from school at noon, towards the track, and about a •hundred feet therefrom. A moment thereafter two trains, .going in opposite directions, passed each other at the crossing; after the passage of the trains, he was found dead in the cattle guard, between the tracks. At a point in the highway, ten feet from the crossing, the engine of the train by which, as the circumstances indicated, the deceased was •killed, could have been seen 750 feet distant. It was a fair ■dav, with but little wind. As the evidence tended to show, no bell -was rung or signal of the approach of the train, by which he was killed, was given. Held, that the proof was insufficient to sustain a verdict for plaintiff, as it did not warrant a finding that there was no negligence on the part of the deceased. Justice Andrews, on page 252, mentions what was suggested as excusing the deceased from exercising the care attributed to him, and disposes of such suggestions with the comment:
“But, these are mere conjectures without any basis in the evidence to support them. Doubtless, the jury might •infer that the deceased was governed by the natural in-stinct of self-preservation, and would not put himself recklessly and consciously in peril of death; but that men are careless and subject themselves thereby, to injury, is the common experience of mankind, and when injured, no presumption exists in the absence of proof that they were exercising due care at the time, In applying the ■rule that a person who seeks to recover for a personal injury, sustained by another’s negligence, must show himself •free from fault, the law discriminates between children and •adults, the feeble and the strong, and only requires of each •the exercise of that degree of care to be reasonably expected in view of his age and condition.
“But it cannot be said, under the circumstances of this *500 case, that the deceased was not capable of appreciating the-danger of going upon the railroad track without looking’ for approaching trains, which, if he had done, would have-saved his life, so far as can be seen from the evidence. ”
In the 124th New York, page 308, the court says in the-syllabus:
“In the absence of evidence tending to show that a boy twelve years of age was not qualified to understand-the danger and appreciate the necessity for observing that-degree of caution in crossing a railroad track an- adult would, he must be deemed sui juris and chargeable with the-same measure of caution as an adult.”
Justice Parker, on page 314, says:
“The law requires a traveler, before crossing a railroad track on a public highway, to look and listen for the-approach of trains. If he omits to do so, and suffers injury while crossing, he cannot recover because of such omission. That which it is his duty to do, he or, in the case of death, his representative must, in an action to recover for damages sustained, prove was done; or at least must prove facts from which the inference can reasonably be drawn that he performed his duty in that respect. It will not be presumed that he did look; it must be proven,”
After discussing the suggestion that the boy might have' looked, he says:
“We are unable to agree with that contention, for it appears that from the place where he was standing it was possible to see along the track a distance of 186 feet; that when he reached the south rail of the switch track, a distance of eight feet and five inches from the-north rail of the track upon which the locomotive was running, he could see for two streets away, and that, before reaching such rail, the view was unobstructed for nearly a mile. It seems to be clear, therefore, that the plaintiff' did not meet the burden resting upon him by merely showing that his face was turned in that direction, for if he had looked he must have seen this engine approaching. But if the inference wa3 permissible that he looked at the moment *501 of changing the bag, it does not meet the requirements of the case. He had still six tracks to cross, and was then, eleven feet from the south rail of the first track. To look, then, and not again; to go on from that point without observing the further precaution of watching for the approach» of trains upon tracks almost constantly in use, was not proper observance of that care which it was his duty to exercise.”
In connection with the principle decided in the foregoing-cases, we must bear in mind the rule laid down by our own-supreme court as to the care required of a person approaching a railway crossing.
In 24 Ohio St., page 631, it is made the imperative duty of a person in the full enjoyment of the faculties of hearing- and seeing, before attempting to pass over a known railroad crossing, to fise them for the purpose of discovering and avoiding danger from an approaching train; and, the omission to do so, without a reasonable excuse therefor, is negligence, and will defeat an action by such person for an injury to which such negligence contributed.
The rule thus laid down has been affirmed in repeated cases, in Railway Co. v. Elliott, 28 Ohio St., 340; Railway Co. v. Rathgeb, 32 Ohio St., 66; Railway Co. v. Whitaccre, 35 Ohio St., 627,
But, there is an unreported case from Lucas county, affirmed by our supreme court, that we think fully sustains, the doctrine of the cases just cited. This is the case of Engelman, Admr. of the estate of John Bartelt, deceased, v. The Lake Shore Ry. Co. The petition is very similar-to the petition in the case under consideration. The decedent, Bartelt, was a boy twelve years old. He was on the-track picking up coal when struck by a train running fifty miles an hour in violation of a city (Toledo) ordinance. The evidence showed that boys were accustomed to go on the track at the point in question for the purpose of picking-up coal, and that the train men would even throw off lumps, for them.
*502 There was a total absence of evidence showing the exercise of ordinary care on the part of the decedent, or even tending to show any excuse for the want of such. care.
At the conclusion of the plaintiff’s testimony the comfpany asked the court to direct a verdict in its favor, and ■this the court did.
We quote what the trial court said:
“The court understands the cause submitted upon •this evidence to present the following facts: That upon the 8th day of February, 1893, the deceased, with ■other boys, for no purpose connected with the railroad company, or its operations, or business or interest, (and without the consent of his parents, but against the warning of his mother), went upon the railway tracks of the defendant; that his purpose was to amuse himself, probably, with these other boys, and to pick up coal and carry it away — for he appears to have had a basket with him, and was apparently in the act of stopping to pick up coal when he was struck dead by the train, which came up behind him. His attention was probably directed to this purpose of getting the coal, and he was thus prevented from seeing the train which was approaching him from behind. To claim that under these circumstances — no odds that coal had fallen off the cars of defendant along there, ■ along the line of its road — and no odds, if you please, that ■brakemen may have thrown it off purposely — they did so without right, and they did so in furtherance of an unlawful ■ and a dishonest purpose on their part. We think that these boys can not be held to have been on the track of defendant with right to be there; but, on the contrary, they were there at best at their own risk. We have no doubt but what the company would have been justified in not only ordering them off, but in keeping them off its tracks. The mere fact that it did not do so, did not give these boys a right to be there to obstruct the management and operations of its trains and the business of the company. Now, however much it is to be regretted, these consequences to this boy from so sad an accident, which destroyed his life in an inrstant — 'however much this is to be regretted, it seems to me that nothing can be clearer than that no financial liability *503 attaches to the defendant because of this injury to the deceased. And, now, inasmuch as we must hold that, had the boy not been killed, but had survived, the inj'ury which he had received, he could not have maintained his action against the defendant company, therefore his administrator •can not maintain an action for the purpose of recovering ■damages by reason of his inj'ury and death.
11 We will therefore sustain the motion which is here made and direct the jury to return a verdict for the defendant.”
This holding of the common pleas court was. affirmed by the circuit court, and on error to the supreme court, the judgments of the common pleas and circuit courts were affirmed, ás already stated, without report, 84 Bull., 227. We think that this authority is decisive of the question, that an infant under the age of fourteen may be guilty of such negligence as will defeat a recovery in his behalf; and, also, that he is bound to the exercise of ordinary care in the presence of danger. And, if we are right in our application of these authorities, what is the conclusion necessarily arrived at in this case?
Can we say from all that appears in this record, from the testimony on behalf of the plaintiff, that there was such contributory negligence as to defeat a recovery? We take it that the duty devolving upon a person approaching a railroad track at a dangerous place applies to this decedent. It was his duty to have exercised his faculties, his eye sight, ■and his hearing. If, by looking, he could have seen this •engine, it was his duty to look; if he failed to look, he would be clearly inexcusable for not looking. He was familiar with the surroundings there; for six or seven years he had lived in the immediate vicinity of that crossing. He knew the uses to which the track was put. He used the ■track for no legitimate purpose. He was there using it as a playground. In the very nature of things he knew, or ■ought to have known, that that was a dangerous place. He was old enough to know that it was a place of danger. *504 Could he have seen the engine? There was no obstruction,, it was broad day light. The boy that was with him, did! see, and from that fact, inevitably follows the conclusion,, that the decedent could have seen had be looked. The evidence shows that instead of looking northward, he was there-facing eastward or to the south. He did not look. He was-the’-e engaged in his sport, totally indifferent to his surroundings, as is disclosed by the record, thoughtless, careless, paying no attention to the call of his associate PhillipMallaley to keep off the track, or to look out. It is-true Phillip Mallaley says that he cannot say that Walter heard the admonition. There is, as disclosed by this-record, a total absence of evidence tending to show on the-part of the decedent, the exercise of even the most ordinary-care, to relieve him of the imputation of contributory negligence. It is absolutely essential to resort to mere conjecture. We think under all the circumstances of this-case, considering his age, his experience, his intelligence,, and knowledge of the tracks, that he was guilty of contributory negligence. Were he an adult killed under the same circumstances, an action for the wrongful killing would never find its way into a courthouse. On this record, applying the principles and authorities cited, we-have no hesitancy in saying that this judgment is clearly, contrary to the evidence.
In arriving at this conclusion we are not unmindful of' the well established rule in Ohio, that where the facts are in dispute, the case is left to the determination of the jury;, nor are we forgetful of the other rule equally well established that where the facts are undisputed,where the minds’ of reasonable men are led to the same conclusion, it becomes the duty of the court to intervene, if upon such a record, the jury has clearly gone wrong on undisputed facts..
Numerous requests to charge by the railroad company were made; but it would be fruitless to go over all of these *505 -requests in detail; but there are some to which we call attention, which, in our judgment, should have been given.
The defendant requests the trial court to say to the jury:
“Even though the said Walter had a right to cross defendant’s track at the place in question, if there was a train obstructing this crossing at that point, and if, generally, children of his age and intelligence and experience, placed in the same situation, would have waited along the side of ■said tracks and not on the track, then it was the duty of the said Walter to wait alongside of said track,and not upon it, ■and if his death resulted from his failure to wait upon the ■proper place, no recovery can be had.”
The company was fairly entitled to this request. Its theory of the case was, that there was absolutely no excuse, for any purpose, on the part of this boy, to be upon that track at that particular time, and if he was there waiting the clearing of the track, so that he could cross, there was ample room just a few feet west of where he stood, where he would be free from injury or danger. And, especially ought the attention of the jury to have been directed to this phase of the case in view of the allegations in the petition that he was on the track for the purpose of crossing, while there was a conspicuous absence of evidence tending to show that he was on the track for any purpose other than play.
The twelfth request was clearly right, and should have been given. It asked in fit and appropriate language the court to say to the jury:
“That the decedent is judged wholly and solely by boys of his age and experience. And, if boys of his age and experience would not have waited upon the track, would have appreciated the danger of waiting there instead of upon the vacant space, he would be guilty of contributory negligence, and could not recover.”
Upon the facts, as detailed in the evidence, the company was entitled to have its theory of the case fairly presented to the jury, and this record does not disclose such apresen- *506 tation as was the company’s right. On the question of contributory negligence the charge is subject to criticism, and. many other requests were made by the company that were pertinent to the issue, and which ought to have been given, but we will not notice them all in detail.
An exception is taken to a certain paragraph of the charge which is as follows:
“So if you find that Walter Heiman knew in time to avoid danger that the train or engine was coming, the-fact, if it be a fact, that no signal by bell or whistle, or otherwise was given would not make the defendant liable.”
It will be observed that the court restricts this to actual knowledge: “If he knew”, is what the court says. Under the rules and authorities cited, we think the court ought to have gone further and said: “If he knew, or by the exercise of ordinary care might have known.” It is the elimination of this element that constitutes the vice in the charge. The Ohio rule makes it important for a person in the presence of danger to exercise his faculties.
The judgment is for $2,500.00. We are not going to reverse this case on that ground, although, it seems to the court that the recovery is excessive. But the case will be reversed on the other grounds already indicated.