## AMELIA BERG v. DULUTH, SOUTH SHORE & ATLANTIC RAILWAY COMPANY.[1]

July 1, 1910.

Nos. 16,542—(123).

**Trespass on railroad — law of Michigan.**
> According to the law of the state of Michigan, as defined by the decisions of the supreme court of that state, a child eleven years of age, who enters

[1]Reported in 126 N. W. 1093.

---

[Note] As to doctrine of "attractive nuisances," see note to Cahill v. E. B. & A. L. Stone & Co. (Cal.) 19 L. R. A. (N. S.) 1094.
    111 M.—20.

a railway yard for the purpose of catching rides on trains, is a trespasser, and the doctrine of the turntable cases has no application.

**Evidence of invitation.**

Certain boys of the village through which respondent railway company operated its railway were permitted to climb upon, help clean, and occasionally ride upon a freight engine which was located on a track some distance from the main railway yards and in charge of a day watchman. The boys also occasionally climbed upon box cars during switching operations in the yard, and they were in the habit of lining up along the side of the freight train which daily passed through the village, and caught rides by grabbing hold of the ladders on the side of the cars when the train started up, and then jumped off before it got under full speed. *Held*, the evidence was not sufficient to establish an invitation to the boys to ride, and the company is not liable in damages to a boy eleven years old, who was injured in attempting to catch a ride in the manner stated.

Action in the district court for St. Louis county to recover $40,000 for personal injuries to plaintiff's infant son, George Bernhard Berg, sustained in Michigan while attempting to catch hold of the ladder of a box car of a moving train. The complaint alleged negligence on the part of defendant in permitting boys to play on and about its moving engines and trains. The answer denied such negligence and alleged that the injury was caused by the carelessness and wrong doing of the infant. The answer further alleged a statute of the state of Michigan providing for punishment for boarding moving trains. The reply set up that defendant was estopped from relying upon the statute by having educated the infant to hang and ride on the cars in violation thereof. The court, Ensign, J., directed a verdict in favor of defendant and from an order denying plaintiff's motion for a new trial, she appealed. Affirmed.

*Victor Linley, P. H. O'Brien* and *Ludvig Arctander,* for appellant.

*Thomas S. Wood* and *C. O. Baldwin,* for respondent.

LEWIS, J.

Appellant company was operating through the village of Barraga, Michigan. The main track passed the east side of the depot upon a slight curve. One switching track commenced on the west side of

the depot platform and connected with the main track about three-hundred feet north of the platform. Two other tracks, used for logging purposes, branched off from the main track to the east and connected with it, one at a point about two hundred feet north of the platform, and the other about one hundred fifty feet north. The section house was located on the west side of the main track at a point about twelve hundred feet north of the depot. There was a beaten path from the section house to the depot along the west side of and close to the main track. The tracks which branched off from the main track and ran east were used for logging purposes, and a logging engine was employed in hauling logs from the woods to the east up to the main track. During the day this engine was stationed on one of the logging tracks at a point nearly opposite the depot, and in charge of a watchman whose duty it was to keep it clean and keep up the steam ready for the night work of hauling logs. The station agent had possession of the key to the switches. A freight train passed daily through the village between four and five o'clock p. m., going north, and stopped there for the purpose of unloading freight, and taking on and switching off cars. On April 5, 1907, George Berg, appellant's son, who was then about eleven years old, attempted to catch hold of the ladder on the side of one of the box cars of this freight train just as it was leaving Barraga, and in doing so lost his hold and fell under the wheels, receiving injuries which necessitated the amputation of both legs.

The complaint alleges "that for many weeks prior to the date of the injury to plaintiff's son a crowd of boys about a dozen in number, including plaintiff's son, attending said school, were in the habit of going to said depot grounds of defendant, out of school hours daily, where they, said school boys, including plaintiff's son, and other boys as well, were allowed, permitted, encouraged and invited by defendant to jump on, grab hold of and ride cars, engines and trains when passing through, stopping and starting at Barraga, and, when switching was being done in said depot grounds, upon the cars, engines and trains doing the same; that among other things said boys were allowed, permitted, encouraged and invited to run switch engines up and down the tracks in said depot grounds, to·

ring the engine bell, to climb upon box cars and set brakes when fly-ing switches were being made and on stationary cars as well, to ride upon the trucks of moving cars, to hang onto moving cars when switching was being done, and many other similar dangerous prac-tices." The complaint further states that it was the daily practice of such crowd of boys, when trains were ready to move out of the depot grounds of Barraga, or were moving out, to jump on, grab hold of the ladders on the cars, and ride for some distance, all of which was done with the allowance, permission, encouragement, and invitation of the defendant, by reason of which George Berg was attracted to the trains by seeing the other boys daily visiting the depot grounds and catching rides by running along the side of the train when it started, and getting on in the manner stated, and that he was neither warned nor prevented from so doing.

There is evidence tending to show that the watchman of the log-ging engine, which was stationed on one of the side tracks during the day, permitted several boys to get on the engine, help clean it, ring the bell, and occasionally ride on it when moved up and down the tracks. But this engine was used only at night, and it does not appear for what purposes it was necessary to move it during the day. It was stationed on one of the logging tracks some distance from the depot yards, and whatever invitation was held out to the boys to assist the watchman in cleaning it, ringing the bell, etc., cannot be considered as an invitation to them to go upon the depot grounds, and to jump upon or to take hold of or ride upon the cars which were being switched to make up the train on the main track, or to ride upon the train when it left the station.

There is also evidence tending to show that, for a number of months prior to the time of the accident, boys of the village, after school hours, had been in the habit of loitering around the depot grounds, and on two or three occasions had been seen to climb upon the top of box cars after a brakeman, and to ride on the cars when they were being switched out to the main track. Two witnesses testi-fied to this effect, and one that she had seen two boys set the brakes on top of one of the cars being switched. Two witnesses testified that they had seen boys on the caboose steps with the brakeman,

but these acts were not general. It was the custom, however, for half a dozen or more of the boys to line up along the side of the freight train after it was made up and ready to start, and then, after it had started, run along and catch hold of the ladders on the sides of the cars and ride up as far as the section house and drop off.

We think it must be taken as fairly proven by credible evidence that this practice was continuous, almost daily, for a number of months. The plaintiff did not plead, or attempt to show at the trial, that there was any direct or express permission to any of the boys to ride or get on any of the cars, but contends that it should be implied that an invitation was held out to the boys by not taking some active steps to stop the practice.

As bearing on this question, it was shown that the boys were in such a position, when climbing on the cars when the train started, that they must have been seen by the conductor, or the brakemen at the rear of the train, or by the engineer or fireman in the engine. On the part of respondent, the members of the train crew all testified that they knew the boys were in the habit of jumping on the cars and taking rides, and they made every effort they could to keep them off; that they never allowed them to ride when they could catch them at it; and that the boys understood it, and never attempted to get on the cars, except when the trainmen were in a position where they could not see them to drive them off. None of the boys identified as those in the habit of catching rides were called as witnesses on the part of the appellant, except her son, George Berg, and, although he did not testify that the brakemen actually saw him, he said they were in a position to see him when he caught rides. One of the witnesses for appellant, Johnson, testified on cross-examination that he saw the brakemen chase the boys off on several occasions, and several of the boys, identified by George Berg as those he had seen taking rides, were called as witnesses on behalf of the defense, and all testified that their practice was to grab the ladders after the train started, and that they were chased off whenever seen. One witness for appellant, Funke, testified that on one occasion George climbed on top of a stationary freight car, loosened the brake, and

let it run down to the other end of the yard; but this was denied by George, who claimed it was his younger brother.

Under the state of facts established by the evidence, was it the duty of respondent railway company to take more active or different measures to break up such practice? The company was not required to bring its train to a standstill in order to drive the boys off, and, even if that had been done, would it have prevented them from repeating the act when the train started again? The train was generally a long one, and the crew consisted of a conductor, three brakemen, the engineer, and the fireman, and it would be unreasonable to require the company to employ a greater number of brakemen than necessary for its purposes just to see that boys did not steal rides. True, a number of watchmen might have been employed to patrol the grounds and drive the boys away, or cause their arrest for trespassing upon the railroad grounds. But, as we understand the law of Michigan, this was not required.

In this case we have to be guided by the decisions of the supreme court of that state, and are of opinion that that court has settled the questions involved contrary to the views of appellant. The Michigan court has never adopted the rule of this and some other states, known as the rule of the turntable cases, which makes an exception in the case of children who may have been drawn by curiosity upon the premises of another and injured by exposed machinery.

In Ryan v. Towar, 128 Mich. 463, 87 N. W. 644, 55 L. R. A. 310, 92 Am. St. 481, that court lays down the rule that an invitation or license to cross the premises of another cannot be predicated on the mere fact that no steps were taken to interfere with such practice, and that there is no difference between children and adults which will warrant the inference of an invitation to enter upon the premises of another, and that no exception to the rule exists in favor of children injured by dangerous machinery naturally calculated to attract them to the premises. The rule was applied to a case where a girl thirteen years old, with other children, was in the habit of crossing the land on which a certain building was located without objection on the part of the company, and she was injured while attempting to save a younger sister, who had become caught between

a water wheel and the wheel pit. That case is approved in Habina v. Twin City, 150 Mich. 41, 113 N. W. 586, 13 L. R. A. (N. S.) 1126, where it was distinctly held that the fact that the company did not deny the public the privilege of traveling over its lands in any direction did not impart to such property the character of a highway and give to individual members of the public rights similar to their privileges in a highway; that the company was not liable for an injury sustained by a licensee from falling into an unguarded ditch while in the exercise of proper care, in the absence of evidence indicating that the act of leaving the ditch open was a reckless and wanton act. The injured person was a licensee, yet the company owed her no duty to notify her of the change in the condition of the premises, and was not liable for her injury, though there were no barriers to the ditch.

In Trudell v. Grand Trunk, 126 Mich. 73, 85 N. W. 250, 53 L. Ed. 271, that court held that a boy seven years and four months old, playing on the railroad right of way, was a trespasser as a matter of law, and that the company was not liable, except when guilty of gross negligence. And further, in the case of Kaumeier v. City, 116 Mich. 306, 74 N. W. 481, 40 L. R. A. 385, 72 Am. St. 525, the court declared that one who in sport attempts to make use of a street car left unguarded upon the track in the public highway is a trespasser, and that the company was not liable to a child injured by falling under its wheels while it was being pushed along the track by her companion, although the company knew that such use was made of the car when left unguarded. See also Formall v. Standard Oil, 127 Mich. 496, 86 N. W. 946; Peninsular v. City of Grand Rapids, 131 Mich. 571, 92 N. W. 38; Baker v. Flint, 68 Mich. 90, 35 N. W. 836; Clark v. Michigan, 113 Mich. 24, 71 N. W. 327, 67 Am. St. 442.

Appellant has called our attention to a line of cases where the injured children were not trespassers. Those cases are not in point here for that very reason. In O'Leary v. Michigan, 146 Mich. 243, 109 N. W. 434, the plaintiff was a child seven years old, who with other children was playing in the street near his father's house, and was injured by being caught in a snatch block, or rope and pul-

ley, which was being used to stretch a wire. The child was not a trespasser in the public street, and the question of negligence on the part of the telephone company and contributory negligence on the part of the child were questions of fact for the jury. The case of Kaumeier v. City, supra, and other cases, were reviewed and distinguished as follows: "There is reasonable ground for distinction between a case where something is left in the highway which can only injure a child by his meddling with it and putting it into operation, in the absence of the owner or person having it in charge and a case like the present when the owner is present operating the apparatus and has actual notice that the children are attracted by the tackle and will play with it unless prevented." In Iamurri v. Saginaw, 148 Mich. 27, 111 N. W. 884, the court divided, and a majority held that the company was liable for damages to a child playing near, by the explosion of a tank wagon which had been left unguarded in a public highway. Boehm v. City of Detroit, 141 Mich. 277, 104 N. W. 626, involved an injury to a child who fell into a hole in a defective sidewalk; and in Powers v. Harlow, 53 Mich. 507, 19 N. W. 257, 51 Am. Rep. 154, the injured boy was rightfully upon the premises, and it was held that an action would lie against the landlord for the injury because the child's father had a right to be on the premises and was working near by. In Ecliff v. Wabash, 64 Mich. 196, 31 N. W. 180, the company was held negligent in permitting a twelve year old boy to ride on the front of an engine pulling a train tender foremost, which collided with another engine; but in that case the boy was guilty of contributory negligence and could not recover. That case differs from the one under consideration in the fact that the boy had repeatedly ridden in a place where it would have been easy to prevent it.

Finding no liability under the law as announced by the supreme court of Michigan, the order appealed from is affirmed.