## WILLIAMS v. VILLAGE OF PETOSKEY.

1. MUNICIPAL CORPORATIONS—BRIDGES—DUTY AS TO MAINTENANCE.
    By Act No. 280, Local Acts 1879, incorporating the village
    of Petoskey, it was provided that all bridges built and to be
    built across Bear river, within the limits of the village, should
    be maintained by the township of Bear Creek at large. The
    village afterwards constructed a race-way for its own use,
    running parallel with the river. Across the race-way and
    river a bridge was constructed by private subscription, which
    bridge was thereafter recognized by both village and town-
    ship as a public way. *Held*, that it was the duty of the vil-
    lage to keep in repair that portion of the bridge which span-
    ned the race-way.

2. SAME—HIGHWAYS—DEDICATION—ESTOPPEL.
    Where a village has assumed to dedicate land to the public
    for highway purposes, and use has been made of the land ac-
    cordingly, it is immaterial, as bearing upon the duty of the
    village to keep the way in repair, whether or not it ever be-
    came strictly a legal highway.

3. SAME—PERSONAL INJURIES—INSTRUCTIONS—RECOVERY OVER.
    Where, in an action against a municipality for injuries
    sustained by reason of the defective condition of a bridge, the
    testimony tends to show that the defect causing the accident
    was due to the negligence of a railroad company, an instruc-
    tion that, if damages should be awarded against the defend-
    ant, it "might have a remedy" against the railroad company,
    does not necessarily call for a reversal of the judgment.

4. PERSONAL INJURIES—DAMAGES—INSTRUCTIONS.
    In an action for personal injuries, an instruction author-
    izing the jury to assess damages for "expense of nursing" is
    erroneous, where there is no evidence that any such expense
    was incurred.

Error to Emmet; Adams, J. Submitted December 17,
1895. Decided February 7, 1896.

Case by Mae A. Williams against the village of Petos-
key for personal injuries. From a judgment for plaintiff,
defendant brings error. Reversed.

*Clay E. Call* (*Wylie & Clapperton*, of counsel), for appellant.

*A. D. Cruickshank* and *M. F. Guinon*, for appellee.

MONTGOMERY, J.   Action for negligent injury.   The declaration avers:

"The said defendant, before and at the time of the committing of the grievances and negligence hereinafter mentioned, controlled, used, and had jurisdiction of a certain wooden bridge located on Lake street, within the corporate limits of said village of Petoskey, the defendant herein.   Said bridge was constructed over and across Bear river, so called, and the water race-way or flume used by said defendant for the purpose of conducting water from said Bear river into the waterworks of said village of Petoskey; said flume or race-way running alongside of said river, and under said bridge constructed across said Bear river and flume, as aforesaid, and being within said village of Petoskey; said bridge being about 60 feet in length, and constructed about 12 feet above the waters of said Bear river, and said Lake street being a public street or highway running through said village of Petoskey; and the said bridge which crosses said Bear river and the water race-way or flume, as aforesaid, being a public bridge located on said street, over said river and flume, as aforesaid, and the said street or highway, to wit, Lake street, being a public street and highway used and controlled by the said village of Petoskey as a public street.   And the said bridge, as aforesaid, was owned, controlled, used, and under the jurisdiction of the said village of Petoskey, upon the 24th day of December, 1891, and for a long time prior thereto; and being at that time, to wit, the 24th day of December, 1891, the property of the said defendant, and under the control and management of the said defendant, and being a public highway and bridge, as aforesaid, it was then and there the duty of the said defendant, by and through its proper officers and representatives, to keep said bridge in good, proper, and sufficient repair at all times, and to keep proper railings and guards on said bridge at all times, and to keep said railings and guards in good repair, so that the public might cross, use, and enjoy said bridge in their traveling upon said bridge, with safety to themselves."

The pleader then proceeds to aver that the defendant negligently allowed the railing to be removed from the bridge, and that it also allowed the light which was customarily maintained in the night-time to be extinguished, and that the plaintiff, "by reason of the want of the light of said lamp usually kept lighted by said defendant upon said bridge, and the absence of the railing and guard of said bridge, fell over the side of said bridge onto the timbers of said bridge extending out from and over the race-way aforesaid, and was greatly bruised, injured, and wounded thereby in her back, chest, head, neck, and shoulders, and her ribs fractured, her chin cut, and her chest and back permanently injured; and fell from said timbers into said race-way, over which said bridge passed, as aforesaid, into the water of said race-course or flume, being of a depth of four or five feet, with a swift and strong current; and by reason of said stepping off and through the space of said bridge where said railing had been removed and torn down from said bridge, and falling over the side of said bridge onto said timbers, as aforesaid, became insensible from said wounds, cuts, bruises," etc.

The plaintiff recovered, and defendant brings error.

It is contended—*First*, that the village of Petoskey is not responsible for the maintenance of the bridge, for the reason that the law of its incorporation imposed the duty of maintaining bridges across Bear river on the township of Bear Creek at large; *second*, that the bridge in question was not on the public street; and, *third*, that, if the village be held responsible for the maintenance of the bridge in question, there was error in submitting the case to the jury.

1. By section 4 of Act No. 280 of the Local Acts of 1879, under which the defendant was incorporated, it was provided that—

"The bridge or bridges now built, or that may hereafter be built, across Bear river, within the territory described in section 1 of this act, shall be built and main-

tained by the township of Bear Creek at large, in the same manner as though the said village was not incorporated."

It appears that the bridge in question was not built by either corporation, but its history is as follows: In 1881, a tract of land, embracing the river from its mouth some distance up stream (southerly), was purchased by the village, and used for waterworks purposes. A dam was placed at a sharp bend in the river, and a flume or raceway constructed in a northerly course and about 15 feet west of the river, across the water lot, so called, to the pumping station. A street called "Lake Street" extended from the village, in a westerly direction, to the water lot, and a street was also platted on substantially the same line, west of the water lot. In 1885 private parties residing in the village and township contributed the necessary fund, and built the bridge in question, on the line of the street and across the water lot. The common council appropriated $50 for "improvement of Lake St. west, and approaches to the bridge," and later adopted a resolution relating to the land connecting Lake street with the land west of the water lot, as follows: " *Whereas*, certain public-spirited citizens of the township of Bear Creek have built two bridges, for public travel and accommodation, over Bear creek, on ground belonging to the village of Petoskey, and no street or highway having been laid out through said grounds on which said bridges are located, and said bridges being deemed by the council of said village necessary public improvements, therefore, be it resolved by the council of the village of Petoskey, that the following described lands owned by the village of Petoskey be and the same are hereby opened and laid out and dedicated to the public for highway purposes;" and the village also contracted for the placing of a light on the bridge. In 1891 the council gave to the Chicago & West Michigan Railway Company permission to change the course of the river, and it was ordered that the committee on fire and water take full charge of the work of changing the course

of the river and building a stone wall for a new course. It was while the railway company was prosecuting this work that the railing on the bridge was taken off, and left off, and resulted in the injury to plaintiff. It appears that a motion was made that the committee on streets be instructed to confer with the township board relative to the removal of a portion of the Lake Street bridge for the purpose of the improvements contemplated by the railway company, but the record fails to show that any action was taken under this resolution. It also appears that the township board, on the 27th of November, 1885, passed the following resolution:

"Moved and carried that the following resolution be adopted:

"*Whereas*, certain public-spirited citizens of the township of Bear Creek have erected two public bridges on highways crossing Bear river in said township, and signified their intentions to dedicate said bridges to the public for highway purposes; and *Whereas*, we deem said bridges a necessary public improvement:

"Therefore, be it resolved, by the township board of the township of Bear Creek, that said bridges be, and the same are, hereby accepted by said board, for and in behalf of said township, and that said bridges be, and the same are, hereby dedicated to the public for highway purposes."

It is not made clear by the testimony whether the bridge in question is one of the bridges referred to, but the inference is a fair one that it is.

In the absence of express legislation, the village, by virtue of its control over the streets and thoroughfares within its limits, is primarily and solely liable for their maintenance. The difficulty here arises out of the statutory imposition of a duty, which would otherwise rest upon the village, upon the township at large. We think, however, it was not within the power of the village to extend the duty thus imposed. When this statute was enacted, there was a stream known as " Bear River," which, if crossed at this point, required a bridge perhaps 30 to 35 feet

in length.  By the construction of the new flume or
race-way subsequently, some 15 feet from the river,
and itself 12 feet in width, it made it necessary that any
bridge spanning the two streams should be about 60 feet
in length.  Surely it cannot be said to have been within
the contemplation of the legislature that a duty would
rest upon the township to bridge artificial channels con-
structed by the village for its own use.  Neither the vil-
lage nor township constructed the bridge in question, but
both recognized it,—the village, by building approaches to
it and dedicating the street to public travel.  We think that
the court was right in holding that the defendant village
was responsible for any want of repair in that part of the
bridge which extended across its own artificial stream,
and that the statute imposed no duty on the township to
build or maintain any bridge at that point.  It is not a
defense that the bridge was built by private subscription,
as the village afterwards recognized it, built approaches
to it, and opened it for travel.  *Saulsbury* v. *Village of
Ithaca*, 94 N. Y. 27 (46 Am. Rep. 122).  It is suggested
that the declaration is not broad enough to admit recovery
on this theory, as but one bridge is referred to; but it is
clearly averred that the injury occurred by reason of the
absence of the railing across the flume or race-way, and
the fact that the duty of the defendant was stated more
broadly than the circumstances warranted could not have
misled the defendant, inasmuch as the bridge at this point
was within a highway under the control of the village,
and was a structure which it was its duty to maintain.

2.  It is contended that the record fails to show that the
*locus in quo* was a street.  It is contended that the vil-
lage purchased the land for the purpose of maintaining
waterworks, and that there is no statutory authority to dedi-
cate it to the public as a street, and that it has not been
in use long enough to constitute it a street by user.  In
the view which we take of this question, we need not de-
termine whether this way was, in strictness, a legal high-

way. It was certainly a highway in fact, open to the public, and travel was invited over it. It has been held that if a municipality, in opening and working a highway, extends the limits in such a way as to invite travel through land which in fact lies outside of the legal highway, that portion is nevertheless to be considered a portion of the way, in determining the duty to repair. *O'Neil* v. *Village of West Branch*, 81 Mich. 544. In *Gallagher* v. *City of St. Paul*, 28 Fed. 305, an instruction that it was not essential that there should be any formal acceptance of a street; that if there was a user permitted by the city, and if the public were all invited, without any dissent by the city, to use it as a public street, the city would be required to keep it in repair,—was sustained. See, also, *Village of Mansfield* v. *Moore*, 21 Ill. App. 326; 2 Dill. Mun. Corp. § 1009, and cases cited. We think it should be held that the village, by its action in this case, has estopped itself from asserting, as against those whom it has invited to travel over this bridge, that it is not a public highway.

3. Complaint is made that the circuit judge instructed the jury that the defendant, if held responsible, might recover from the railway company. Though this might well have been omitted, we should hesitate to say that the defendant was damaged by it.

There was, however, one error committed on the trial, which compels us, reluctantly, to reverse the judgment and direct a new trial. The circuit judge charged the jury upon the question of damages as follows: "You must take into consideration the expense to the plaintiff of the resulting illness from said accident, including in this her bills for nursing, medicine, and physician's services." There is no evidence whatever that any bill for nursing was incurred; nor were the circumstances such as to imply that those who ministered to her wants intended to make any charge. Within previous rulings of this court, this instruction was error. *Cousins* v. *Rail-*

*way Co.,* 96 Mich. 386; *Shippy* v. *Village of Au Sable,* 65 Mich. 494, 502.

Judgment reversed, and a new trial ordered.

LONG, GRANT, and HOOKER, JJ., .concurred. MC-GRATH, C. J., did not sit.