BUXTON v. AINSWORTH.

1. HIGHWAYS AND STREETS—LAW OF THE ROAD—MEETING OF VEHICLES—DUTY TO TURN OUT.
   One driving on a highway need not turn to the right, so that all of his vehicle is to the right of the center, if he turns far enough so that a passing vehicle, without turning at all, may pass safely.

2. SAME—COLLISION—GROSS NEGLIGENCE.
   Testimony that defendant drove rapidly on a highway at night, without looking for vehicles approaching from the opposite direction, and by the exercise of ordinary care could have seen plaintiff's vehicle with which he collided, justifies submission of the issue of gross negligence.

3. NEGLIGENCE—GROSS—INSTRUCTIONS—DEFINITION OF TERMS.
   Where the questions of willfulness, wantonness, and recklessness are submitted, those terms should be defined, so as to prevent their being understood as mere words of emphasis, and

therefore as referring to the doctrine of comparative negligence, which does not obtain in this State.

4. Same—Discovered Peril.

In order to entitle plaintiff to recover, despite his own negligence, on the ground of the gross negligence of defendant, the latter must have discovered plaintiff's negligence, or neglected the most ordinary precaution in failing to do so.

5. Damages—Personal Injuries—Care and Nursing—Proof of Value.

Permitting recovery for care and nursing, without evidence of their value, is error.

Error to Ionia; Smith (Stearns F.), J., presiding. Submitted July 7, 1904. (Docket No. 41.) Decided December 22, 1904.

Case by James Buxton against Thomas Ainsworth for personal injuries. There was judgment for plaintiff, and defendant brings error. Reversed.

*R. A. Hawley,* for appellant.

*William H. Howard, Charles L. Wilson,* and *Morse & Locke,* for appellee.

Montgomery, J. Plaintiff recovered a verdict and judgment of $1,000 for damages incurred in a collision between vehicles severally driven by plaintiff and defendant. The collision took place on the 8th of November, 1901, at a point about two miles north of the village of Lake Odessa. The plaintiff and his wife were returning from Ionia to their home, at Lake Odessa, in a single covered buggy. The defendant was driving north from Lake Odessa toward his home in the country. He was driving a single buggy. The testimony was conflicting as to whether it was dark or otherwise at the time of the collision. The defendant's testimony tended to show that it was quite dark. The plaintiff and his wife, on the other hand, testify that they were able to see the defendant approaching when at least 17 rods away. The collision occurred about

53 feet south of a small culvert or bridge. Plaintiff testified that he saw the defendant approaching while he (plantiff) was driving across the bridge. The bridge was 14 or 16 feet wide, and its approach from the south widened out about equally in each direction, and the wrought portion of the road was, at the point of collision, about 20 feet in width. This road had been newly graveled, and there was testimony tending to show that the gravel had been left as dumped from the wagon. The plaintiff testified:

"It looked as though the gravel had been dumped a load in a place; just the bigness of a wagon dropping a load, I should think.  *  *  *  The graveled part of the way had not been worked down any by travel."

We do not overlook the defendant's contention that the testimony fails to show that the gravel was left heaped up, and the criticism of the charge of the court submitting that question to the jury, but we think the testimony above quoted was clearly open to the construction that the gravel had not been leveled. The testimony shows that the travel was, after the gravel had been put on and up to the time of the collision, confined almost exclusively to a track on the easterly side of the wrought portion of the road, although there were wagon tracks upon the graveled portion, showing some travel thereon.

The plaintiff testified that on seeing the defendant coming he turned out to the right to get out of the track; that the defendant turned to *his* left, and to plaintiff's right. Plaintiff then proceeds:

"When he turned out, I saw he was going to catch my horse, and I swung it back to the left just enough so he missed my horse.   As he came up, coming up such a rapid speed, it frightened my horse going on the wrong side, and she made a terrible spring, and the wheels came right together, locked right in together like that.   My front wheel went right over his front axle, dropped right in there. When they came together, it came so solid, my horse stripped right loose from the buggy, broke the whiffletree twice in two in the center and one end.   It stripped the harness

right off, and all that was left on the horse was just the bridle and the lines, and took me right out over the dashboard, and I landed out just beyond the thills, maybe ten or twelve feet from the buggy, and the horse dragged me as much as two or three rods.   I stopped the horse by happening to pull on one line more than I did on the other, and wheeled her right around, and so I kept my horse.   I was driving my horse on the walk, and when my horse sprang it moved the buggy back to the southeast."

Defendant testified that it was very dark; that he was trotting his horse probably five or six miles an hour; that he never saw the plaintiff until the buggies were right together; that before he struck the plaintiff's buggy his (defendant's) horse turned a little to the west; that this was a voluntary movement of the horse, and was not guided by defendant.   Defendant further testifies that he was not looking for Mr. Buxton, or anybody else, on the highway.

The plaintiff's testimony tended to show that defendant was intoxicated at the time.

The circuit judge charged the jury as follows:

"I charge you, according to the law, that it is the duty of persons meeting each other upon any road or highway, while traveling with any vehicle, to seasonably drive to the right of the middle of that portion of the road which is wrought or worked for travel, and that if such person fails so to do he is presumably guilty of negligence."

The court also gave plaintiff's request, as follows:

"If the jury believe the story of the plaintiff and his wife as to the manner of the collision—that they had turned out to the right on the west side of the road before defendant met them, leaving sufficient space for him to safely pass them by keeping in the traveled track he was driving in, then there was no fault or negligence on the plaintiff's part; and if you find that the defendant was negligent in turning suddenly to the left in front of the plaintiff, then the plaintiff is entitled to recover such damages as he has suffered, or may suffer hereafter, from the fact of such collision."

It is contended that these two instructions are at vari-

ance. We do not think so. As an abstract proposition, the driver of a vehicle about to meet another team is presumptively at fault if he fails to turn to the right of the center of the wrought portion of the highway; but if the presumption that he is thus at fault is overcome by the evidence of circumstances, or if it appears that the fault, if found, did not essentially contribute to the injury, the fact that he may have been in a sense out of place does not place him beyond the protection of the law. *Spofford* v. *Harlow*, 3 Allen, 176. If, although some portion of the plaintiff's carriage was to the left of the center portion of the traveled way, the presence of the carriage at that point in no way interfered with the passage by defend-ant pursuing precisely the course he was in, it is difficult to see how the fault of plaintiff in any legal way contributed to the injury so that recovery is to be denied him for an act of defendant negligent in itself. The case of *Quinn* v. *O'Keeffe*, 9 App. Div. 68, 70, is quite in point. See, also, 18 Am. & Eng. Enc. Law (2d Ed.), p. 579.

The circuit judge submitted the case to the jury on the additional theory that, even though plaintiff was negligent, "yet, if the defendant's conduct was wanton and willful or reckless," the plaintiff might recover. This instruction is attacked by the defendant's counsel on two grounds: *First*, that there was no testimony in the case which justified the court in submitting to the jury the question of defendant's gross negligence at all; and, *second*, that gross negligence was not properly defined.

We are of the opinion that there was testimony which authorized the submission of the question to the jury. The jury might have found that the defendant approached the plaintiff at a rapid gait, without looking for him, or for any other person, in the highway, and that by the exercise of most ordinary care he would have known of the plaintiff's danger. If the jury had so found, the case would have fallen within the designation of gross negligence as defined by this court. *Richter* v. *Harper*, 95 Mich. 225; *Labarge* v. *Railroad Co.*, 134 Mich. 139.

But there is much force in the contention that the instruction laid down no rule for the guidance of the jury. The language of the charge left it open to the jury to find the defendant's conduct wanton, willful, or reckless according to standards wholly undefined, and the instruction failed to direct the attention of the jury to the important element of so-called gross negligence; i. e., that before gross negligence can be made out which warrants recovery notwithstanding the precedent contributory negligence of the plaintiff, the negligence of the latter must have been discovered, or the defendant must have neglected the most ordinary precaution in failing to discover it. As the charge was given to the jury, the terms "wanton," "willful," and "reckless" may have been considered as words of emphasis, and, so understood, defined the doctrine of comparative negligence, which does not obtain in this State. *Richter* v. *Harper*, supra.

The court permitted recovery for care and nursing, in the absence of any basis furnished by proof of value. This was error, under *Williams* v. *Village of Petoskey*, 108 Mich. 260.

The other questions presented are not likely to arise on a new trial.

For the errors pointed out, the judgment is reversed, and a new trial ordered.

The other Justices concurred.