KNICKERBOCKER v. DETROIT, GRAND HAVEN & MILWAUKEE RAILWAY CO.

1. NEGLIGENCE—RAILROADS—CONTRIBUTORY NEGLIGENCE OF INFANT DECEDENT.

Where it was undisputed that an infant of ten years of age, killed at a railroad crossing, could have seen the approaching train for a space of 70 feet before he reached the rails, the view being unobstructed for a distance of half a mile or more up the track, that he was of ordinary intelligence, had lived in the vicinity of railroad tracks and was accustomed to go about the city and to manage the bicycle on which he was riding when the accident occurred, he was, as a matter of law, chargeable with contributory negligence.

2. SAME—CHILDREN.

> While the duty to use care can only be predicated of one who has capacity to understand and ability to perform, and the care to be exercised by children must be in proportion to their age and capacity, the infant is chargeable with some degree of care for his own safety, and failure to exercise any care is negligence *per se.*

3. SAME—GROSS NEGLIGENCE—LAST CLEAR CHANCE—DISREGARD OF CONSEQUENCES.

> Gross negligence, as applied to conduct which authorizes recovery notwithstanding the contributory negligence of plaintiff, is the intentional failure to perform a manifest duty in reckless disregard of the consequences as affecting the life or property of another, or a thoughtless disregard of consequences without the exercise of any effort to avoid them.

4. SAME.

> It was not gross negligence on the part of the engineer, whose train was running upwards of 20 miles an hour, the brakes being set, and who saw decedent approaching the track on his bicycle at a point where he could have perceived the train if he had looked, though decedent was bent over and did not appear to pay any attention, not to stop the train or to gain complete control of it, since the approach of persons towards the track is not usually evidence of their negligence or of any peril.

Error to Shiawassee; Miner, J.  Submitted November 8, 1911.  (Docket No. 61.)  Decided December 8, 1911.

Case by Anna Knickerbocker, administratrix of the estate of Franklin Glenn Knickerbocker, deceased, against the Detroit, Grand Haven & Milwaukee Railway Company and the Grand Trunk Western Railway Company for the unlawful killing of plaintiff's decedent. Judgment for plaintiff against the defendant the Detroit, Grand Haven & Milwaukee Railway Company, which brings error.   Reversed, and no new trial ordered.

*Harrison Geer*, for appellant.

*A. L. Chandler* and *George E. Pardee*, for appellee.

Franklin Glenn Knickerbocker, ten years and three

days old, riding a bicycle on a cement sidewalk on the west side of Glenwood avenue, in the city of Owosso, was struck and killed by defendant's west-bound passenger train, May 11, 1909, at about 7:15 o'clock in the afternoon. He had crossed a repair track of the Ann Arbor Railway Company, the south rail of which was 71 feet north of the north rail of defendant's track. The street descends slightly to the south, in which direction he was riding, and the sidewalks are substantially level with the roadway. The street is 66 feet wide, with a post and board fence on each side of it between the lines of railway. The bicycle had 28-inch wheels and a 22-inch frame—an ordinary wheel for men—and was equipped with a coaster brake. Decedent was accustomed to ride a bicycle, and, his mother testified, "was perfectly at home on one." His father had returned from his work, and apparently the lad had taken the wheel for a little run, having left home only about 10 or 15 minutes before he was killed. A witness for plaintiff testified that he was walking on the street with his wife and others, that decedent passed them, and that he saw him, a hundred feet or so away, at the instant when the train struck him. Witness was north of the Ann Arbor track at the time, heard the train, looked, and saw it when it was some five rods east of the street.

The declaration alleges negligence on the part of the defendant in the following particulars: (1) Disobedience of an ordinance regulating the speed of trains in the city; (2) failure to keep a proper lookout for travelers; (3) failure to give proper crossing signals; (4) failure to carry a headlight; (5) the agents of defendant—

"Negligently, wilfully, recklessly, intentionally, and wantonly, and while and where said agents and servants could see that said plaintiff's son was not aware of said danger, and while and where said agents and servants could have avoided said injury by using proper effort on their part, failed to give any warnings by placing a headlight on the engine, where the same could be seen, or by ringing the bell or sounding the whistle, or by providing

a flagman at said crossing to warn persons about to cross said railroad track, and otherwise failed as aforesaid, to give any warning of the approach of said train,   *   *   * and negligently, wilfully, recklessly, intentionally, and wantonly ran said train at a high rate of speed.   *   *   * "

The plea was the general issue.

Plaintiff having rested her case, the court directed a verdict in favor of the defendant Grand Trunk Western Railway Company, refusing to do so as to the other defendant. Defendant offered testimony, and, having rested, moved the court to direct a verdict in its favor, for the reasons that its negligence had not been shown, or, if any negligence had been shown, it was not the proximate cause of the injury; that the contributory negligence of plaintiff's intestate had been conclusively established; that plaintiff's intestate had been emancipated by his father. The court was of opinion that, in view of the age of the boy, the question of his negligence was for the jury. The question of the gross negligence of defendant was withdrawn from the jury in the charge.

Defendant preferred, among others, the following requests to charge, which were not given:

" (6) I charge you that Franklin Glenn Knickerbocker was in his eleventh year at the time of his death; that he had attended school nearly four years, and was about to complete the fourth grade; that he was of sufficient intelligence to go down into the business part of the city of Owosso on errands for his mother, and that he did this for some time; that while there he could protect himself and keep out of the way of cars, vehicles, and the like; and I further charge you that the law required of him that he make such use of his faculties of hearing and sight when approaching the Glenwood avenue crossing as an ordinarily prudent boy of his age, intelligence, and experience would have done; and I further charge you that he did not make such use of his senses of hearing and sight, and was therefore guilty of contributory negligence, and your verdict would be for the defendant.

" (7) I charge you that plaintiff's decedent, Franklin Glenn Knickerbocker, was guilty of contributory negli-

gence as a matter of law, and you will return a verdict for defendant."

There was a verdict and judgment for the plaintiff. Appellant relies upon errors assigned upon the refusal to direct a verdict, the refusal to give its requests to charge, and the refusal to admit in evidence an ordinance of the city of Owosso, prohibiting the riding of bicycles on the sidewalk.

OSTRANDER, C. J. (*after stating the facts*).    The court erred in submitting to the jury the question of the contributory negligence of plaintiff's intestate.   The fact is undisputed that for a distance of 70 feet before he reached the crossing plaintiff's intestate could have—must have—seen the approaching train, had he looked.   The view was unobstructed; the train could have been seen a half mile or more to the east.   He was not riding fast; he was riding down a slightly inclined walk; he was a normal lad, except for a slight deafness in one ear, of average intelligence, used to going about the city, crossing railroad tracks and managing a bicycle.   He lived in the vicinity, and had apparently crossed these tracks within a very few minutes.   The crossing sign was before him.   He was alone, with nothing to distract his attention, intent upon no errand, with no playmates preceding or following him.   We must assume, in view of the testimony, that the jury, under the charge of the court, found in his youth excuse for his carelessness.   There ought to be no dispute about the governing rules.   It is true that "duty can only be predicated of one who has capacity to understand and ability to perform," and that the care to be exercised by children, while it must be ordinary care, must be proportioned to their age and capacity.

It was said, *Ecliff* v. *Railway Co.*, 64 Mich. 196, 202 (31 N. W. 180, 183):

"Where there is any conflicting evidence as to the danger likely to be incurred, or as to the act or acts in

getting in the way or reach of such danger, or as to the age or capability of the child, the question of the contributory negligence of the person injured or killed should be submitted to the jury."

The rule is a familiar one. *Cooper* v. *Railway Co.*, 66 Mich. 261 (33 N. W. 306, 11 Am. St. Rep. 482); *Baker* v. *Railroad Co.*, 68 Mich. 90 (35 N. W. 836); *Wright* v. *Railway Co.*, 77 Mich. 123 (43 N. W. 765); *Lehman* v. *Steel Works*, 114 Mich. 260 (72 N. W. 183). It was further said in the *Ecliff Case:*

"A boy of 12 years knows as well as an adult that upon the top of freight cars, or in front of the engine, when reversed, between that and the cars, is not a safe place when the train is moving. The fact that a boy of that age is more reckless and not as cautious as a man, in the face of such danger, is not of itself enough to excuse him."

In *Henderson* v. *Railway Co.*, 116 Mich. 368, 374 (74 N. W. 525), a boy eight years old was injured by a street car. It was said:

"Witnesses for the plaintiff state that, if the boy had looked in the direction of the car, he could have seen it. It was but common prudence in crossing such a thoroughfare to look, not only for the car, but for any vehicle which might be coming. Injury would have occurred from collision with an ordinary wagon just as surely as from running into this car, and, from the testimony of the lad himself, he had intelligence enough at the time to know this. Why, then, should it be left for the jury to say that he had not?"

See, also, *Trudell* v. *Railway Co.*, 126 Mich. 73 (85 N. W. 250); *Perego* v. *Railway Co.*, 158 Mich. 225 (122 N. W. 535). In the *Ecliff*, the *Trudell*, and *Perego Cases*, the injured child was trespassing; while in the case at bar, as in the *Henderson* and in the *Baker Cases*, the child was rightfully in the highway, crossing the track upon which injury was received. The test to be applied to determine whether the injured person was negligent is not different in either case.

When a child is old enough to be chargeable with some degree of care for his own safety, then—

"As to any given event, a child is responsible for just such care for his own safety as may reasonably be expected of one of his age, development, and intelligence under the circumstances characterizing the particular event." *Secard* v. *Lighting Co.* (Wis.), 133 N. W. 45.

We are left in no doubt concerning the manner in which plaintiff's decedent was killed. His intelligence and his ability to appreciate the danger which actually threatened, and to avoid it, if seasonably discovered, cannot be questioned. He did not discover the actual danger. Under the circumstances, he was chargeable with some degree of care for his own safety, and it does not appear that he exercised any care. The jury should have been so instructed.

Whether the cause should go down for a new trial depends upon whether, as appellee contends, there was testimony tending to prove the gross, wanton negligence of defendant's servants. It is certified that the record contains the substance of all of the testimony given at the trial. We do not find in the declaration any allegation that the peril of plaintiff's decedent was discovered by any of the servants of defendant, after which defendant failed in the exercise of due care. The term "gross negligence" has been used in cases decided by this court, and has a definite meaning, when referred to as authorizing a recovery for a negligent injury, notwithstanding the contributory negligence of the plaintiff. It means the intentional failure to perform a manifest duty, in reckless disregard of the consequences as affecting the life or property of another. It also implies a thoughtless disregard of consequences, without the exercise of any effort to avoid them. *Schindler* v. *Railway Co.*, 87 Mich. 400, 411 (49 N. W. 670); *Denman* v. *Johnston*, 85 Mich. 387, 396 (48 N. W. 565). In *Labarge* v. *Railroad Co.*, 134 Mich. 139 (95 N. W. 1073), the cases are reviewed, and the doctrine of "gross negligence," as stated and defined

in *Richter* v. *Harper*, 95 Mich. 221, 225 (54 N. W. 768, 769), is approved. In the last-mentioned case, it is said:

"It is urged by plaintiff's counsel that the negligence of defendants was so gross and wilful as to excuse concurring negligence on the part of the plaintiff; it being claimed that where the negligence of the defendant is gross or wilful the contributory negligence of the plaintiff is not a defense. This is but another way of stating the doctrine of comparative negligence, which has never obtained in this State. It is true that the contributory negligence of the plaintiff does not prevent recovery in a case where the defendant, who knows, or ought, by the exercise of the most ordinary care, to know, of the *precedent* negligence of the plaintiff, by his *subsequent* negligence, does plaintiff an injury. * * * This rule does not permit recovery, notwithstanding plaintiff's contributory negligence, but it recognizes that such discovered negligence of plaintiff, or his negligence which should have been discovered, is not a contributing cause to the injury in a legal sense. This, we think, is the logical statement of the rule as deduced from the authorities."

See, also, *Buxton* v. *Ainsworth*, 138 Mich. 532 (101 N. W. 817).

There was a conflict of testimony concerning the speed of the train; little, if any, actual conflict as to the giving of signals, or as to whether the headlight of the locomotive was burning. Witnesses testified that they did not hear the signals, although in a position where they could have heard them; did not see the burning headlight. Other witnesses testified that the signals were given, and that the locomotive carried a lighted headlight. Glenwood avenue is the street first reached and crossed by defendant's trains from the east. It is near the eastern limit of the city. Defendant's engineer, who drove the locomotive engine upon the occasion in question, was a witness for defendant, and testified that when he first noticed the Knickerbocker boy he was approaching the crossing, and the engine was about 100 feet from the crossing. The boy was 25 feet or 30 feet from the track. The boy appeared to be "stooped over, had his hands on the handle-

bars." "He didn't seem to me as though he was paying any attention." The train had a speed of about 20 miles an hour. No steam was being used, and none had been used for a quarter of a mile. The train was equipped with Westinghouse air brakes. Air had been applied before Glenwood avenue was reached, somewhat reducing the pressure. He put the brake lever into the emergency position and opened the sand box. The whistle had been blown for the crossing, and was not again used before the boy was struck, because there was not time to do more than was done. There were cars stored on the Ann Arbor railway track, which has been referred to, east of Glenwood avenue, to within 35 feet of the east line of the street. As has been stated, there was a space of 70 feet between the two tracks, in which space, if not before, the boy had opportunity to look, listen, and stop, and in crossing which space he might have been seen, probably, if the engineer had been looking at and for nothing else. But it is not negligence—clearly it is not gross negligence—to fail to stop or to fail to gain complete control of a train of cars, merely because persons are seen approaching the track upon a highway on foot, or with vehicles. Such an approach is not usually evidence of negligence, and such persons are not usually in any peril. No error was committed in refusing to submit the question of "gross negligence" to the jury.

The judgment is reversed, and no new trial will be granted.

STEERE, MOORE, BROOKE, and STONE, JJ., concurred.