WEXEL *v.* GRAND RAPIDS & INDIANA RAILWAY CO..

1. RAILROADS—CONTRIBUTORY NEGLIGENCE—DUTY TO TRESPASSERS —PERSONAL INJURIES.

A person in the possession of all his faculties, sober and in his right mind, who, without necessity, selected the track of a railroad company, in active use, and walked along the right of way on a stormy day, was guilty of contributory negligence, which precluded his estate's recovering for his injury and death by being hit by an engine and tender that was backing up on the tracks, no gross or subsequent negligence of defendant being established.

2. SAME—SUBSEQUENT NEGLIGENCE—LAST CLEAR CHANCE—GROSS NEGLIGENCE—MAINTAINING LOOKOUT.

Where an engine and tender operating along a portion of defendant's right of way that the public used as a way or thoroughfare, collided with a pedestrian who was walking along beside the track too near for safety, and it appeared the day was stormy and an outlook difficult to maintain with certainty, and deceased was on the side of the track which was difficult to watch from the cab in rounding a curve, and where the tender was in front, without a lookout on it, the engineer, who did not see deceased until after the tender struck him, was not guilty of gross negligence.

3. SAME—RULE OF DUE CARE—REASONABLE CAUTION.

A lookout is required to be maintained with such a degree of care as a person of ordinary prudence and caution, having in mind both the safety of the engine and those it carried, would have employed, according to the circumstances and probabilities of danger at the portion of the track on which they were passing. The engineer was not bound to stop or slow up simply because he observed ahead of him a pedestrian who had no apparent disability and was of sufficient age to understand the danger of a railroad track.

4. SAME—DEFINITION OF GROSS NEGLIGENCE.

Gross negligence has been defined as the intentional fail-

ure to perform a manifest duty, in reckless disregard of the consequences, as affecting the life or property of another, and it implies a thoughtless disregard of consequences, without the exercise of any effort to avoid them.

Error to Muskegon; Sullivan, J. Submitted January 6, 1916. (Docket No. 37.) Decided March 30, 1916.

Case by Bendine Wexel, administratrix of the estate of Odin H. Wexel, deceased, against the Grand Rapids & Indiana Railway Company for the unlawful killing of plaintiff's decedent. Judgment for defendant on a directed verdict. Plaintiff brings error. Affirmed.

*F. E. Wetmore*, for appellant.

*James H. Campbell*, for appellee.

STEERE, J. On January 28, 1908, plaintiff's intestate was struck and fatally injured by a switch engine of defendant while he was walking along its railroad track in the outskirts of the city of Muskegon, Mich. The trial court directed a verdict for defendant at the conclusion of the proofs, upon the ground that it appeared from the undisputed evidence deceased had unnecessarily and for his own convenience selected a known path of danger, but for which the accident could not have occurred, and while traveling along it took no reasonable precaution for his own safety, which primary negligence caused or contributed to the accident and precluded a recovery.

Plaintiff's intestate was a man of mature years, sober, and in full possession of his faculties, both mental and physical. That a sane adult, with no infirmities, who unnecessarily selects the used track of a railroad as a pathway and continues to remain upon or walk along it until struck by a passing train or engine, is, as a general proposition, guilty of negligence which

at least contributes to any injury he may sustain, needs no discussion or citation of authorities.

While not directly conceding deceased's negligence, plaintiff's counsel do not seriously claim to have sustained the burden of proof upon the issue of whether deceased was free from contributory negligence, but base their contention that plaintiff is entitled to recover upon the charge in her declaration, and claimed sustaining proof, that defendant was guilty of discovered, or gross, negligence in running its engine over its track backwards, without a proper lookout, and without warning, by bell or whistle, at the place of the accident, which occurred on a portion of defendant's right of way generally used by the public for many years as a thoroughfare, with the knowledge and acquiescence of defendant.

Most of the material facts are undisputed. The accident occurred after 9 o'clock in the forenoon, about halfway between Grand and Houston avenues, in the southerly part of the city of Muskegon, where defendant's track runs through the block which lies between the avenues, curving in a northwesterly and southeasterly direction. It begins to curve northwesterly from Grand avenue which lies south of Houston. On the south side of Grand avenue, west of and near the track, are located the "Rogers boiler shops," with an office on the avenue and the shops back of it to the south. Farther south, and near the track, is another industry called "the chemical works." On either side of the railroad are north and south streets, crossing Grand avenue, available to readily reach the central part of the city from Rogers' shops, although along the track is the "shortest cut"; and it was shown that employees of factories in that vicinity, and the public generally, were accustomed to travel on foot along defendant's right of way in that locality, when and as they chose, to the knowledge of defendant's agents and

employees, without any steps being taken to prevent such use. At the time of the accident deceased was 32 years of age, in good health, with no infirmities, a marine engineer in government employ as inspector of machinery in the construction and repair of ships in the lighthouse service. Upon that morning he went from where he was stopping in the central part of the city to Rogers' shops, to inspect the construction of some boilers which were being made there for a lightship, and to get a sample of the steel used in them, to send away for testing. After remaining at the shops for a time he started to return down town, walking along the railroad track, carrying a piece of steel, called by some of the witnesses a "rod," described by Rogers as 18 or 19 inches long, 6x6, and weighing 20 or 25 pounds. Rogers, called as a witness by plaintiff, was the last person who talked with him. He testified:

"I told him that I was going down town; that if he would wait a little while I would take him down town. He said he was in a little bit of a hurry, as I remember now, and wanted to get right off. After he left the office, he walked along just north of the rails. There seems to be a little path running along that side, and he was taking that path. Before he started down the track I saw him fix his cap. When he got right at the crossing, he laid the iron that he had on his shoulder down, and muffled up his coat and pulled his cap down over his ears and buttoned his coat up, and then picked up the iron and put it upon his shoulder and went down the track. The weather was very stormy; the wind was blowing very hard, and the snow blowing. In fact it was blowing so hard you could hardly see a block away. It was snowing quite bad, and the snow was carried in all directions on account of the wind. The wind was coming from the northwest right up to the track from the lake. There is a gully right there, and it comes up there a little bit stronger."

An engine was switching cars south over this piece of track that morning to a point near the chemical

works, from a dock farther north, engaged in making up a freight train at the accustomed place called "the yard-limit boards," and while returning for more cars after taking a drag south past Rogers' shops, running backwards at from 6 to 10 miles an hour towards the north against the wind in the same direction deceased was walking, struck and fatally injured him. He was not run over by the engine, but was outside of the rails just near enough to them for the tender to strike and throw him to one side. The three witnesses who saw the accident so stated, and each testified to the impression, until just as deceased was struck, that he was or would be sufficiently to one side for safety. Two of them did not know whether he was hit or not until after the engine had passed.

Plaintiff's testimony failed to disclose even *prima facie* that warnings by bell and whistle were not given as customary and required by law. The accident occurred on defendant's right of way in the middle of a block, where such signals are not imperative. Defendant's testimony was positive that the whistle was sounded on approaching Houston avenue crossing just before entering upon the curve to the north beyond it, and the bell was ringing automatically all the time the engine ran. Three of plaintiff's witnesses testified negatively that they did not hear or notice the bell ring, and one said he would have heard it if it was ringing, but on cross-examination testified all he meant to say was he did not hear any whistle or bell. Another stated he did not notice any signals; that he did not "very often pay any attention to those whistles," and "the bell may have been ringing all the time, and I might not have noticed it at all." The third, who testified no whistle was blown between Grand and Houston avenues, also said:

"I don't know whether the bell was ringing or not. I heard the whistle up there by Rogers' shop. I saw

the engineer in the cab with his head out of the window."

Four persons were riding in the engine cab, the engineer, fireman, and two other members of the train crew who were assisting in the work of making up their train. None of them observed deceased, or then knew that any one had been injured. He was outside the rails on the fireman's side when struck. The fireman was putting in a fire, and consequently not watching the track, while the engineer, in charge of and operating the engine, was in his seat, keeping a lookout ahead, as testified to by both those with him upon the engine and others who saw him at the time. There was a sharp curve in the track at the point where the accident occurred. The engineer testified that he was keeping a vigilant watch ahead but it was then snowing and blowing, so that he could not see any distance, and the storm, combined with the "lay of the track," made it impossible for one on the engine to see any person on or close to the track at that time and place.

Although it is shown that while running this engine backward in the work of making up a train constant lookout was maintained, the speed was not excessive, all signals required by law were given, and no rules of the company for operating an engine under such conditions violated, plaintiff urges that it was gross negligence not to have kept such a lookout as to have seen deceased in time to adequately warn, or stop, before hitting him, and insists that because this was a place customarily used as a thoroughfare by foot passengers to the knowledge of defendant, greater precautions should have been taken, and a more vigilant watch maintained, not alone from the cab of the engine, but by a person stationed at the front end of the tender in the direction the engine was running. Assuming greater care should have been taken in that particular, liability does not follow from such neglect

unless the misconduct of those operating the engine was wilful, wanton, and gross. Unquestionably greater caution is required when running through populous portions of cities or villages and at places where pedestrians are known to customarily travel upon the track than in more sparsely settled sections of the country, but the general rule applicable to all conditions is that a lookout shall everywhere be maintained with that degree of care which a person of ordinary prudence and caution, having in mind both the safety of the train, or engine, and those it carried, as well as persons likely to be upon the track and injured by it, would commonly exercise according to the circumstances and probabilities of danger at the portion of the track then being passed over. In that connection, conceding to the limit claimed that the engineer was familiar with the track where the accident occurred and knew it was customarily used as a way of travel by the public, both adults and children, and especially by employees going to and returning from manufacturing institutions in that locality, it is also evident that he knew the day was cold and wild and stormy; that weather conditions were such there was little probability of persons being out in the storm except as business or other necessities demanded; that it was a time of day when neither children would be going to nor returning from school, nor employees going to or returning from their work. He would be justified in not anticipating that the old and feeble or the young, weak, and helpless would be abroad at such a time, and had the right to assume that any adult persons using the track as a thoroughfare upon such a day would exercise reasonable care for their own safety commensurate with existing conditions. As the engine approached, deceased was outside the rails in a position where but a step in the right direction on his part would have put him out of danger.

None of the three witnesses called by plaintiff who were in that vicinity and observed deceased at or about the time of the accident appear to have regarded his danger so imminent as to require any warning from them, either to him or those on the approaching engine. Ralph Kanaar, who testified that when he first saw deceased he was walking between the rails, said:

"Why, just a little before the engine got to him he stepped on the outside of the rails, and I thought to myself then that he was in the clear until I saw the splur in the snow, and the curtain was blowing on that side of the engine so that I could not see that it did hit him. * * * You see there, was an awful sharp curve there. * * * At times it was blowing enough so that snow flurries would swish about in the air. * * * He was quite clear to me until the light snow from the tank blowed up. I could see him quite plain until that light snow blowed up: that kind of blinded him from me, but I kept my eye on him all the time from the time I saw him walking in the middle of the track."

Charles Misch, who testified that as he saw him deceased was "walking just outside of the tracks" on a path at the end of the ties, and he did not appear to be conscious of the approach of the engine, also said:

"I supposed that he heard it when it blew, but by the time it was a couple of feet from him it was too late to holler at him then. * * * I thought, 'That fellow is pretty close,' and just as I stopped, it struck him."

William Peterson, a mail carrier, who happened to be in that vicinity, testified that he noticed deceased was facing the storm as he walked along the track and might meet with an accident, but did not call him, saying in part:

"I thought that he was far enough on the east side of the track so that—at least, I thought he was on the outside of the rails on the further side from me, and

after the engine passed between us I saw his form laying alongside the track.   *   *   *   He was on what we would term 'the east side' of the track there. The engine was backing slowly toward him."

It has been repeatedly held by this court that those running trains are not required to stop or check simply because they see ahead of them upon or approaching the track persons who are apparently without disability and of sufficient age to understand the hazards of a railroad track, always to be recognized as "a perpetual menace of danger."

The fatal result of this unfortunate accident gives pause to discussion or criticism of deceased's initial negligence as compared with that of the defendant's employees, which plaintiff contends was *gross,* and therefore so reckless, wanton, or intentionally wrong as to acquit the injured party of fault. *Lake Shore, etc., R. Co.* v. *Miller,* 25 Mich. 274; *Freeman* v. *Railway Co.,* 74 Mich. 86 (41 N. W. 872, 3 L. R. A. 594). This court, in harmony with the great weight of authority elsewhere, has defined gross negligence as—

" 'the intentional failure to perform a manifest duty, in reckless disregard of the consequences, as affecting the life or property of another.   It also implies a thoughtless disregard of consequences, without the exercise of any effort to avoid them.' *Schindler* v. *Railway Co.,* 87 Mich. 400 [49 N. W. 670].   See, also, *Richter* v. *Harper,* 95 Mich. 221 [54 N. W. 768]; *Labarge* v. *Railroad Co.,* 134 Mich. 139 [95 N. W. 1073]; *Buxton* v. *Ainsworth,* 138 Mich. 532. [101 N. W. 817, 5 Am. & Eng. Ann. Cas. 146]; *Knickerbocker* v. *Railway Co.,* 167 Mich. 596 [133 N. W. 504]; 29 Cyc. p. 507." *Putt* v. *Railway Co.,* 171 Mich. 227 (137 N. W. 136).

As was there said in conclusion:

"Applying the definitions and principles laid down in the foregoing cases to the facts in the case at bar, we are of opinion that there was no evidence in the

case which warranted its submission to the jury upon the question of defendant's gross negligence."

The judgment of the trial court was therefore right and will stand affirmed.

STONE, C. J., and KUHN, OSTRANDER, BIRD, MOORE, BROOKE, and PERSON, JJ., concurred.