### WORTMAN *v*. DETROIT UNITED RAILWAY.

1. APPEAL AND ERROR—EVIDENCE—DIRECTED VERDICT.

In an action for personal injuries, where a verdict was directed in favor of defendant, the Supreme Court will consider the evidence in the most favorable view possible upon the question of whether an issue was presented for the jury.

2. STREET RAILWAYS — CROSSING ACCIDENT — NEGLIGENCE — SUBSEQUENT NEGLIGENCE—EVIDENCE—SUFFICIENCY.

In an action for personal injuries caused by a collision between the truck in which plaintiffs were riding and defendant's street car, at a street intersection, where there

was no proof that the perilous position of the truck was known, or ought to have been known to the motorman for such a time previously that he could have stopped his car and avoided the accident, there was no room for the application of the doctrine of subsequent negligence.

3. SAME — CROSSING ACCIDENT — CONTRIBUTORY NEGLIGENCE — EVIDENCE.

A truck driver, whose view was obstructed, who approached a street intersection at such rate of speed that he was unable to stop his truck and avoid a collision after he discovered a street car approaching, was guilty of negligence as a matter of law.

Error to Wayne; Mandell (Henry A.), J. Submitted February 7, 1922. (Docket No. 68.) Decided March 30, 1922.

Case by Frederick Wortman and another against the Detroit United Railway for personal injuries. Judgment for defendant on a directed verdict. Plaintiffs bring error. Affirmed.

*Baubie & Baubie,* for appellants.

*Corliss, Leete & Moody* (*Frederic T. Harward,* of counsel), for appellee.

MOORE, J. Each of the plaintiffs sued the defendant. The cases were tried together. From a directed verdict in favor of the defendant the case is brought here by writ of error. On November 11, 1918 (Armistice day), the two plaintiffs were proceeding north in a Packard truck operated by one Parker on Lincoln avenue, Detroit. Before the truck approached the intersection of Forest avenue where defendant operates a single track west-bound street railway, one of defendant's cars passed. At that time Mr. Parker slowed down the truck to about 5 to 7 miles per hour and proceeded towards the intersection. A house on the southeast corner of the intersection

obstructed the view to the east.   At about 25 feet from the track one can see easterly on defendant's track a distance of about 175 feet.   It is claimed that after the house was passed Mr. Parker looked east and saw defendant's second car coming at a high rate of speed, the first car having passed on; that the front of the truck extended in front of Mr. Parker a distance of 6 feet and when he saw the second car for the first time, the front of the truck was about 19 feet from the track; that the truck could have been stopped in about 18 to 20 feet, going at the speed and under the conditions of that day; that if Mr. Parker stopped the truck, the front of it would be on defendant's track or be struck by the over-hang of the car, which is 1½ feet; to avoid which he turned westerly on Forest avenue, applied more speed to the truck and attempted to run down the track ahead of the car, thinking that if defendant slowed down or stopped the car he would reach a place of safety; that defendant's car did not stop nor slow down but continued at high speed and struck the truck on the side at the westerly curb line of Lincoln avenue.

It is the claim of the defendant that the street car was under control, that the truck as it approached the intersection was going as fast or faster than the street car, and that, instead of the street car running into the truck, the truck ran into the street car. There were witnesses who sustained this contention. As a result of the impact the two plaintiffs were thrown out of the truck and sustained many fractured bones and other serious injuries.   After all the evidence was in the court directed a verdict for defendant on the ground that Mr. Parker, the driver of the truck, was guilty of contributory negligence, and that the doctrine of gross negligence or "last clear chance" did

not apply to the case, citing the case of *Miller* v. *Railway,* 200 Mich. 388.

A verdict having been directed in favor of the defendant the court must consider the evidence in the most favorable view possible upon the question of whether an issue was presented for the jury. *Krouse* v. *Railway Co.,* 215 Mich. 139.

Counsel say:

"But assuming, but not conceding, for the sake of argument, that the plaintiffs' evidence showed them guilty of negligence in the first instance, we submit that the question of defendant's gross negligence should have been submitted to the jury under proper instructions.

"Plaintiffs' evidence, and in fact all of the evidence, presented this issue for the jury, viz.: Was defendant guilty of gross negligence in failing to stop or slow down its car after plaintiffs' position of peril was, or in the exercise of due care should have been discovered by defendant's motorman? The motorman was negligent in not stopping or slowing down the speed of the car."

It goes without saying that the motorman could not see the truck until it had arrived at a position where the driver of the truck could see the car. We think there is no room for the application of the subsequent negligence doctrine in this case. There is no proof that the perilous position of the truck was known or ought to have been known to the motorman for such a time previously that he could have stopped his car and avoided the accident.

In *Champaign* v. *Railway,* 181 Mich. 672, this court said:

"The rule of discovered negligence can have no application here. This turn upon the track was made when the car was less than 30 feet away. As soon as an intention to cross was first made apparent, the motorman did everything possible to give warning, stop the car, and avoid the accident."

In *Fritz* v. *Railway Co.*, 105 Mich. 54, it was said:

"This rule has been applied by this court in street railway cases. * * * In each of these cases the situation of plaintiff was such that it was apparent to the motorman that, if the car continued in its course, a collision would be inevitable, and this was apparent to him for a considerable time before the collision. Do these cases necessarily rule the present?

"In this case it is apparent that the collision was of a sudden. The motorman did not see in advance that the plaintiff was about to cross the track, nor until a very few seconds before the collision actually occurred."

See, also, *Knickerbocker* v. *Railway Co.*, 167 Mich. 596; *Putt* v. *Railway Co.*, 171 Mich. 216; *Buxton* v. *Ainsworth*, 138 Mich 532 (5 Ann. Cas. 146).

The case then must turn upon the question of whether Mr. Parker, the driver of the truck, was guilty of negligence as a matter of law. Mr. Parker, the driver of the car, testified that after the first car passed he slowed down to 7 miles an hour, that a house on the southeast corner of the intersection cut off his view so that he could not look up the track in the direction from which the cars came until he got within 25 feet of the track, that he was 6 feet back of the front of the truck, that the overhang of the street car was 1½ feet and that he saw he could not stop the truck before it would reach the track, and for the purpose of avoiding the collision turned to the left hoping to run ahead of the car, and that he had hardly started to turn before the collision occurred.

On the cross-examination he said in part:

"*Q.* I say, you knew if he did not slacken, you could not go across?

"*A.* I couldn't tell whether I could or not.

"*Q.* If you had stopped when you first saw the car, you would have had five feet to spare?

"*A.* I would have stopped on the track in front of the car. If I had approached that track at the rate

of 4 miles an hour, I could have stopped the truck in 12 feet, I should think. If I approached it at 3 miles an hour, I could have stopped the truck. I couldn't say exactly, 6 or 7 feet.

"*Q.* Then, it was the speed that you were approaching the track that caused you not to be able to stop within 20 feet wasn't it?

"*A.* Speed at 7 miles an hour?

"*Q.* You say yourself if you had been going 3 or 4 miles an hour you could have stopped in 12 feet, 8 feet to 12 feet?

"*A.* Yes.

"*Q.* But you were going at such a speed when you got out from behind that building and you saw the street car, that you could not stop without going upon the track?

"*A.* Well, I don't know for sure whether I could stop or not. You see, I figured if I had stopped, I would have been right in front of the car.

"*Q.* Then you knew if you figured you would be right in front of the track, if you did stop, you knew well that it would not do for you to go straight ahead?

"*A.* Unless I swung so that if he did hit me, he would hit me in the back of the truck.

"*Q.* When you got out from behind that building and saw things the way they were, saw the street car coming, you knew that you could not stop if you went straight ahead until you got on the track?

"*A.* I figured I couldn't stop in time, that's all. I figured that he could slow up. So I made a turn to the west, diagonally to the northwest."

The other testimony of the plaintiffs was to the effect that after the driver of the truck reached a point where he could see a street car approaching the intersection of Forest avenue and Lincoln avenue, he could not stop the truck before it would reach the street car track.

The case is unlike *Calvert* v. *Railway*, 202 Mich. 311; *Reichle* v. *Railway*, 203 Mich. 276; and other cases cited by counsel for appellants as will appear by an examination of those cases.

The instant case is more like a line of cases, examples of which are *Donlin* v. *Railway*, 198 Mich. 330;

*Colborne* v. *Railway,* 177 Mich. 139; *Miller* v. *Railway,* 200 Mich. 388, and the cases cited therein.

The judgment is affirmed, with costs to the appellee.

FELLOWS, C. J., and WIEST, CLARK, BIRD, SHARPE, and STEERE, JJ., concurred.

The late Justice STONE took no part in this decision.